[No. B039981. Second Dist., Div. Four. June 25, 1991.]

GUNNAR SKARBREVIK, Plaintiff and Respondent, v.
COHEN, ENGLAND & WHITFIELD et al., Defendants and Appellants.

**COUNSEL**

Haight, Brown & Bonesteel, Roy G. Weatherup, Richard F. Runkle, Thomas N. Charchut, Linda L. Streeter and Kenneth C. Byrne for Defendants and Appellants.

Mathon & Rosensweig, Michelle Cooper, William Rosensweig, Buchalter, Nemer, Fields & Younger, Marcus M. Kaufman and George L. Hampton for Plaintiff and Respondent.

## OPINION

EPSTEIN, J.—Attorney Stuart A. Comis and the law firm of Cohen, England & Whitfield appeal from a judgment entered against them and in favor of plaintiff Gunnar Skarbrevik after a jury trial on the issues of conspiracy to defraud and professional negligence.[1] The principal questions presented in this appeal concern the liability of counsel of a close corporation to a minority shareholder for professional negligence, and the liability of a corporate attorney for conspiring with majority shareholders to defraud the minority shareholder by wrongfully diluting his interest in the corporation.

We hold that defendant attorneys owed no legal duty to plaintiff, and thus conclude that the court erred in submitting the theory of professional negligence to the jury. We further hold that plaintiff's cause of action for conspiracy to defraud against Comis is barred by principles announced in *Wise* v. *Southern Pacific Co.* (1963) 223 Cal.App.2d 50 [35 Cal.Rptr. 652], *Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566 [108 Cal.Rptr. 480, 510 P.2d 1032] and *Doctors' Co.* v. *Superior Court* (1989) 49 Cal.3d 39 [260 Cal.Rptr. 183, 775 P.2d 508]. For these reasons, we reverse the judgment.

### PROCEDURAL SUMMARY

At one time, plaintiff Gunnar Skarbrevik was an officer, director, employee, and 25 percent shareholder of American Pacific Insurance Brokers, Inc. (American Pacific or corporation) together with Martin Erlich, Jerry Greenblatt, and Dale Potter, each of whom also was an officer, director, employee, and 25 percent shareholder of the corporation.

---

[1] On August 8, 1990, having concluded that Comis could not be liable for conspiring to defraud by concealment and that the jury rejected professional negligence as a basis of liability, we reversed the judgment. On September 6, 1990, we modified our opinion and denied plaintiff's petition for rehearing. On October 30, 1990, the California Supreme Court granted plaintiff's petition for review, transferred the matter back to this court, and ordered us to vacate our decision and reconsider the matter "after permitting the filing of supplemental briefs and oral argument on whether the judgment should be reversed because of the inconsistent verdict rationale of the 'Order Modifying Opinion and Denying Rehearing', dated September 1990.(Gov. Code, § 68081.)"

On November 7, 1990, we vacated our opinion of August 8, 1990, as modified on September 6, 1990. This opinion follows the filing of supplemental briefs and additional oral argument.

In July 1985, plaintiff filed this action against the corporation and against Erlich, Greenblatt, and Potter.[2] In June 1986, plaintiff amended his complaint (Code Civ. Proc., § 474), inserting the names of attorney Stuart A. Comis and the law firm, Cohen, England & Whitfield, in place of Doe I and Doe II, respectively. In February 1987, plaintiff filed his second amended complaint against the corporation, Erlich, Greenblatt, Potter and the attorney parties. This is the charging pleading. In it plaintiff alleged causes of action against the nonattorney parties for wrongful termination, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, declaratory relief, fraud, constructive fraud, conspiracy to defraud, intentional infliction of emotional distress, negligent infliction of emotional distress, specific performance and breach of oral contract. Against the attorney defendants, plaintiff alleged causes of action for conspiracy to defraud, professional negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress.

Prior to trial, plaintiff entered into a settlement agreement with the corporation, Erlich, Greenblatt, and Potter. The settlement provided for a stipulated judgment of $540,000 in plaintiff's favor, to be satisfied by payment of $90,000 within a specified time. The settlement recited that the $90,000 was to compensate plaintiff solely for emotional distress injuries suffered during the course of his employment with the company.

The case proceeded to jury trial against the attorney defendants on the causes of action for conspiracy to defraud and professional negligence. Plaintiff did not pursue his claims of intentional and negligent infliction of emotional distress.

The jury returned a general verdict in favor of plaintiff and against defendants in the amount of $1 million.[3] With respect to the issue of punitive damages, the jury also made special findings that defendant Comis had conspired to commit fraud, and that there was clear and convincing evidence that, in so doing, he acted with malice[4] but not oppression, and that he committed fraud against the plaintiff. Thereafter, the jury assessed punitive damages against Comis in the amount of $15,000. The trial court reduced the jury's award against the attorney defendants by $90,000, recognizing the settlement with the other defendants. Plaintiff's net judgment was $910,000

---

[2]The corporation is not a party to this appeal. Neither is Erlich, Greenblatt or Potter.

[3]"The verdict of a jury is either general or special. A general verdict is that by which they pronounce generally upon all or any of the issues, either in favor of the plaintiff or defendant; . . ." (Code Civ. Proc., § 624.) The jury's verdict in this case is improperly entitled "Special Verdict."

[4]The trial court's minute order for the November 21, 1988, proceeding incorrectly states that the jury did not find malice.

in compensatory damages against the attorney defendants, and $15,000 in punitive damages against Comis.

The attorney defendants' motions for a new trial and for judgment notwithstanding the verdict were denied. This appeal followed.

## FACTUAL SUMMARY [5]

In 1968, Erlich founded and incorporated American Pacific, an insurance brokerage firm. In 1975, plaintiff merged his insurance agency into Erlich's, and each became a 50 percent shareholder in American Pacific. Plaintiff paid Erlich $75,000 to become an equal partner.

In 1982, plaintiff arranged a merger between American Pacific and an insurance agency owned by Greenblatt and Potter. Plaintiff, Erlich, Greenblatt and Potter each became a 25 percent shareholder in American Pacific, with each owning 100 shares of stock. Each was also an officer, director and employee of the corporation. Defendant Comis represented American Pacific in its merger with the Greenblatt-Potter agency.[6]

At a meeting held on July 13, 1983, Erlich advised plaintiff that Greenblatt, Potter and he "were unhappy with [him] and they could not afford to keep [him] on the books." Plaintiff suggested that the other shareholders buy him out. He thought his shares were worth $720,000, and asked for a buy out at $6,000 a month for 10 years. After some negotiation, it was agreed that Erlich, Greenblatt and Potter would pay plaintiff $540,000 for his shares, the payment to be made in monthly installments of $4,500 for 10 years. Plaintiff was told that Comis would prepare the necessary documents to effect the buy out. A few days after the meeting, plaintiff was asked to resign from his position as director and officer of American Pacific. His resignation became effective on July 31, 1983, and his employment with the corporation ended on that date.

---

[5]In reliance on *Sills* v. *Los Angeles Transit Lines* (1953) 40 Cal.2d 630 [255 P.2d 795] and *Fish* v. *Los Angeles Dodgers Baseball Club* (1976) 56 Cal.App.3d 620 [128 Cal.Rptr. 807, 91 A.L.R.3d 1], the attorney defendants contend that they are entitled to have the evidence that they presented considered in the light most favorable to them because of claimed instructional error.

Both *Sills* and *Fish* are inapposite. These cases hold that when a court erroneously refuses an instruction, the evidence must be viewed in the light most favorable to the issue addressed by the refused instruction if it is supported by the pleadings and evidence. (40 Cal.2d at p. 633 and 56 Cal.App.3d at pp. 623-624.) No such contention is made in this case. We therefore review the evidence in the traditional manner, indulging all reasonable inferences in favor of the verdict. (*Jessup Farms* v. *Baldwin* (1983) 33 Cal.3d 639, 660 [190 Cal.Rptr. 355, 660 P.2d 813]; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 278, p. 289.)

[6]Comis testified that he billed American Pacific a total of $4,850 for legal services rendered on its behalf in 1983, 1984, and 1985.

At Erlich's request, Comis prepared the necessary documents to enable American Pacific to repurchase plaintiff's stock—a redemption agreement, a promissory note, a consulting agreement, and a covenant not to compete—and sent them to Erlich, Greenblatt and Potter along with a transmittal letter dated July 25, 1983. Comis also sent them a letter addressed to plaintiff, dated July 25, 1983, which he asked them to forward to plaintiff along with the documents. In that letter, Comis advised plaintiff that he was representing the corporation and suggested that, because plaintiff's interests were adverse to the interests of the corporation, he retain independent counsel for advice. Apparently, that letter was never sent to plaintiff. In August 1983, plaintiff contacted Erlich and asked him if the papers were ready. Erlich told plaintiff that, on legal advice, he, Greenblatt and Potter had decided not to pay him anything for his shares and that no contract would be forthcoming.

In December 1983, Greenblatt contacted Comis and told him that because of plaintiff, the corporation was experiencing serious financial difficulties. He said that in order to aid the corporation, he, Erlich, and Potter had used all of their own property to secure corporate loans and that they had reduced their salaries. Greenblatt also told Comis that he, Erlich and Potter felt that it was appropriate that the corporation compensate them for their financial sacrifices and asked whether the corporation could do so by issuing them additional shares of stock.

In a December 27, 1983, letter to Greenblatt, Comis offered detailed advice about the proposal to issue additional stock. That letter is one of two pieces of correspondence central to plaintiff's conspiracy claim against the attorney defendants. Comis began with the observation that he was sorry to hear that plaintiff "will apparently not even discuss the repurchase of his stock by the three of you or the corporation" and that the remaining shareholders "apparently concluded that the best way to face this problem is to attempt to dilute [plaintiff's] ownership interest in the corporation by issuing large numbers of shares to [themselves], thereby reducing [plaintiff's] percentage of stock in the corporation." Comis explained that the stock dilution plan was complicated and would take a longer period of time than envisioned.

Comis pointed out the principal obstacle: the corporate articles contained a preemptive rights provision,[7] which required that before additional stock could be issued to the three of them, 25 percent of the new shares would

---

[7]Article 6 of American Pacific's articles of incorporation provided:

"Each shareholder of this corporation shall be entitled to full pre-emptive or preferential rights, as such rights are defined by law, to subscribe for or purchase his proportional part of any shares which may be issued at any time by this corporation."

have to be offered to plaintiff. Noting that this would defeat the purpose of the contemplated stock issuance, Comis explained that this problem could be resolved by amending the articles of incorporation to eliminate the preemptive rights provision. But such an amendment would have to be approved by the board of directors and by stockholders with a majority of the voting power. Since Comis felt that plaintiff would not voluntarily consent to the amendment, he advised Greenblatt that it would be necessary to hold a 'special shareholders' meeting" to approve the amendment and that plaintiff would have to be given notice of the meeting. Comis suggested 10 days notice to comply with the Corporations Code.[8] He also enclosed a set of documents drafted to accomplish the elimination of the preemptive rights provision.

Comis advised Greenblatt that any action taken as officers and directors of American Pacific "must be in pursuit of a proper corporate purpose and not solely for personal gain," and he expressed his opinion that the two bases suggested by Greenblatt appeared to be adequate justification for the issuance of additional shares of stock. These were the assumption of personal liability for bank loans to the corporation by Erlich, Greenblatt and Potter and the extraordinary efforts by those parties to solve problems created by plaintiff. Comis cautioned against the issuance of hundreds or thousands of shares since plaintiff only owned 100 shares. Comis suggested that several stock bonuses be issued over a reasonable period of time in order to significantly reduce plaintiff's ownership interest in the corporation. He also suggested issuance of 100 shares per person for each legitimate corporate purpose and noted that additional stock bonuses could be issued at intervals of several months for other legitimate corporate purposes. He emphasized that stock bonuses could only be issued for past performance, not anticipated future activities. Comis testified that at no time between July 13, 1983, and December 27, 1983, did he advise the corporation not to consummate its $540,000 purchase agreement with plaintiff.

Greenblatt testified that before the December 27, 1983, letter was sent, Comis told him that the corporation had to give plaintiff 10 days' notice of any special or annual shareholders' meeting and that the notice had to set forth the agenda for the meeting. Greenblatt also stated that Comis never told him not to give notice of any meeting or that he should do anything detrimental to plaintiff, and that Comis's advice slowed him down on what he felt should be done for the good of the corporation.

The second major piece of correspondence relied upon by plaintiff is Comis's March 8, 1984, letter to Greenblatt. In it Comis stated that his December 27, 1983, letter had contemplated that the corporation would hold

---

[8]See Corporations Code section 601, subdivision (a).

a special shareholders' meeting in January to amend the articles of incorporation by deleting the preemptive rights provision. He went on to state that "[s]ince this never took place, it is possible to use the annual shareholders' meeting which, pursuant to the bylaws, is required to take place on March 1 of each year as a means of approving the Amendment to the Articles of Incorporation." Comis attached a new set of papers memorializing the "meeting" and action supposedly taken to delete the preemptive rights provision.

Comis apparently knew that no annual shareholders' meeting had been held and that plaintiff was unaware of the proposal to amend the corporate articles. Nevertheless, he perfected the amendment by filing the requisite documents with the Secretary of State and the Department of Corporations. Comis later denied having been aware of a notice requirement for the annual shareholders' meeting and stated that he did not advise the corporation of the need to give such notice.

By 1985, as the result of five corporate resolutions each authorizing the issuance of one hundred shares of stock to each of the officers of American Pacific, plaintiff's stock had been diluted from 25 percent to 4.7 percent. This was done without his knowledge. He learned about the dilution after he filed suit.

## DISCUSSION

The jury was presented with two bases of liability by plaintiff: conspiracy to defraud and professional negligence. As to defendant law firm, however, the sole theory of liability was imputed negligence. In returning a general verdict against Comis and his law firm, the jury necessarily found that Comis was negligent and imputed that negligence to his firm. The jury's special findings and award of punitive damages also reflect its finding that Comis conspired to defraud plaintiff. We therefore proceed to determine whether the judgment can be upheld on either or both of these theories.

### I

### *Negligence*

Defendants contend that the court erred in its determination that, as attorneys, they had a legal duty to plaintiff. They argue that because there was no such duty in this case, the issue of professional negligence should not have been submitted to the jury. We agree.

"A key element of any action for professional malpractice is the establishment of a duty by the professional to the claimant. Absent duty

there can be no breach and no negligence." (*Goldberg* v. *Frye* (1990) 217 Cal.App.3d 1258, 1267 [266 Cal.Rptr. 483].) "An attorney generally will not be held liable to a third person not in privity of contract with him since he owes no duty to anyone other than his client. The question of whether an attorney may, under certain circumstances, owe a duty to some third party is essentially one of law and, as such, involves 'a judicial weighing of the policy considerations for and against the imposition of liability under the circumstances. [Citation.]' (*Goodman* v. *Kennedy* (1976) 18 Cal.3d 335, 342 [134 Cal.Rptr. 375, 556 P.2d 737].)" (*Schick* v. *Lerner* (1987) 193 Cal.App.3d 1321, 1329 [238 Cal.Rptr. 902].)

██ Plaintiff has not asserted at any point in this litigation that he had an attorney-client relationship with defendants. He has argued instead that "he fell within the small category of third persons to whom an attorney owes a duty due to his status as an equal shareholder of the client, a closely held corporation, and given the nature of the advice furnished by [defendants] to American Pacific bearing upon shareholder rights."

██ Determination of whether in a specific case an attorney will be held liable to a third person not in privity "is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the [attorney's] conduct and the injury, and the policy of preventing future harm. [Citation.]" (*Lucas* v. *Hamm* (1961) 56 Cal.2d 583, 588 [15 Cal.Rptr. 821, 364 P.2d 685].) Limited exceptions to the privity rule have evolved in situations where the third party is the intended beneficiary of the attorney's services or the foreseeability of harm to the third party resulting from professional negligence is not outweighed by other policy considerations. (*St. Paul Title Co.* v. *Meier* (1986) 181 Cal.App.3d 948, 951 [226 Cal.Rptr. 538].)

Beneficiaries under a will have been permitted to maintain a cause of action against an attorney whose negligence in drafting the will reduced the share they would have received if the will had been properly drawn. (*Heyer* v. *Flaig* (1969) 70 Cal.2d 223, 228 [74 Cal.Rptr. 225, 449 P.2d 161]; *Lucas* v. *Hamm, supra,* 56 Cal.2d 583, 588.) Liability in such cases is premised on the theory that an attorney who undertakes to fulfill the testamentary instructions of a client in actuality assumes a relationship not only with the client but also with the client's intended beneficiaries. (*Ibid.*) Similarly, an attorney representing a trustee "assumes a relationship with the beneficiary akin to that between trustee and beneficiary" and thus assumes a duty of care toward the beneficiary. (*Morales* v. *Field, DeGoff, Huppert & MacGowan* (1979) 99 Cal.App.3d 307, 316 [160 Cal.Rptr. 239].)

Attorneys also have been held liable to third parties for their negligence in other transactions which were intended to directly benefit the third party. *Donald* v. *Garry* (1971) 19 Cal.App.3d 769 [97 Cal.Rptr. 191, 45 A.L.R.3d 1177] concerned an attorney who was hired by a collection agency to file suit on a debt. He was held liable to the creditor who had assigned the debt for collection when the lawsuit was dismissed because of the attorney's negligence. In *Roberts* v. *Ball, Hunt, Hart, Brown & Baerwitz* (1976) 57 Cal.App.3d 104 [128 Cal.Rptr. 901], a law firm was held liable to a third party lender for negligent misrepresentation in furnishing a letter with incorrect and misleading information to its client, knowing that the letter would be shown to prospective lenders in order to obtain a loan. In each of these cases, the third party was expressly intended to receive the benefit of the attorney's work or advice. Imposition of a duty of care to the third party was therefore both reasonable and expected.

In contrast, no duty has been found when the third party is someone with whom the client is dealing at arm's length, rather than someone intended to be benefited by the attorney-client transaction. In *Goodman* v. *Kennedy* (1976) 18 Cal.3d 335 [134 Cal.Rptr. 375, 556 P.2d 737], an attorney who negligently advised his clients regarding the requirement of registering the corporation's stock was held not to have a duty of care to purchasers of the stock. Rejecting the purchasers' argument that duty should attach because the attorney's advice was intended to affect them and because harm to them was foreseeable, the court noted that the purchasers were not intended beneficiaries of the attorney's advice, but rather were individuals with whom the clients negotiated at arm's length. "To make an attorney liable for negligent confidential advice not only to the client who enters into a transaction in reliance upon the advice but also to the other parties to the transaction with whom the client deals at arm's length would inject undesirable self-protective reservations into the attorney's counselling role." (*Id.* at p. 344; see also *Burger* v. *Pond* (1990) 224 Cal.App.3d 597, 605-606 [273 Cal.Rptr. 709]; *St. Paul Title Co.* v. *Meier, supra,* 181 Cal.App.3d 948, 952.)

Perhaps most relevant to the question before this court are the cases holding that "an attorney has no duty to protect the interests of an adverse party [citations] for the obvious reasons that the adverse party is not the intended beneficiary of the attorney's services, and that the attorney's undivided loyalty belongs to the client." (*Fox* v. *Pollack* (1986) 181 Cal.App.3d 954, 961 [226 Cal.Rptr. 532].) In *Fox,* the attorney represented certain parties to a real estate transaction, and at their request and expense he prepared the necessary documents for the property exchange. The other parties to the transaction furnished no information to the attorney, neither requested nor received legal advice from him, and were never told that the attorney represented them. Their sole contact with the attorney was at a

single meeting at the attorney's office on the date the exchange agreement was executed. The court refused to impose a duty on the attorney to these nonclients, explaining: "The effect of such a duty on respondent would be the eradication of confidentiality [citations], the creation of a conflict of interest [citation], and the consequent destruction of the attorney-client relationship between respondent and his clients. The strong public policy in maintaining and enforcing the fidelity and duty of the attorney toward the client militates against the imposition of a duty to nonclients under these circumstances. [Citations.]" (*Id.* at p. 962; see also *Parnell* v. *Smart* (1977) 66 Cal.App.3d 833, 837-838 [136 Cal.Rptr. 246].)

In *Schick* v. *Lerner, supra,* 193 Cal.App.3d 1321, a couple involved in a long-term relationship consulted a therapist to resolve interpersonal problems. After some therapy, the couple ultimately separated. The woman, Mickelson, filed a *Marvin* action (*Marvin* v. *Marvin* (1976) 18 Cal.3d 660 [134 Cal.Rptr. 815, 557 P.2d 106]) against the man, Schick, and in connection with that action asked the therapist to prepare and execute a declaration detailing statements made by Schick during the course of their therapy. The therapist consulted with an attorney, seeking advice as to whether he could properly execute the declaration since it contained confidential information. The attorney told him he could do so, and the therapist executed the declaration for use in Mickelson's lawsuit. Schick sued Mickelson, the therapist, and the attorney, seeking damages for wrongful disclosure of confidential information. In holding that Schick could not state a cause of action against the therapist's attorney for professional negligence, the court explained: "No manner of artful pleading can disguise the fact that plaintiff was a potential adverse party whose interests could not be represented by [the therapist's] chosen counsel. The end and aim of [the attorney's] advice was not to bestow some tangible or intangible benefit on either plaintiff or Mickelson, but to protect his client from potential liability. That he may have acted negligently in doing so gives neither third party a cause of action against him." (193 Cal.App.3d at p. 1331.)

█ Plaintiff argues for an additional exception based upon the relationship of an attorney for a close corporation to the corporation's stockholders. We find that such an extension is unwarranted.

An attorney representing a corporation does not become the representative of its stockholders merely because the attorney's actions on behalf of the corporation also benefit the stockholders; as attorney for the corporation, counsel's first duty is to the corporation. (*Meehan* v. *Hopps* (1956) 144 Cal.App.2d 284, 293 [301 P.2d 10].) Corporate counsel should, of course, refrain from taking part in any controversies or factional differences among shareholders as to control of the corporation, so that he or she can advise the

corporation without bias or prejudice. (See *Goldstein* v. *Lees* (1975) 46 Cal.App.3d 614, 622 [120 Cal.Rptr. 253].) Even where counsel for a closely held corporation treats the interests of the majority shareholders and the corporation interchangeably, it is the attorney-client relationship with the corporation that is paramount for purposes of upholding the attorney-client privilege against a minority shareholder's challenge. (*Hoiles* v. *Superior Court* (1984) 157 Cal.App.3d 1192, 1198 [204 Cal.Rptr. 111].) These cases make clear that corporate counsel's direct duty is to the client corporation, not to the shareholders individually, even though the legal advice rendered to the corporation may affect the shareholders.

As explained in the Rules of Professional Conduct, rule 3-600, "(A) In representing an organization, a member shall conform his or her representation to the concept that *the client is the organization itself*, acting through its highest authorized officer, employee, body, or constituent overseeing the particular engagement. [¶] (B) If a member acting on behalf of an organization knows that an actual or apparent agent of the organization acts or intends or refuses to act in a manner that is or may be a violation of law reasonably imputable to the organization, or in a manner which is likely to result in substantial injury to the organization, the member shall not violate his or her duty of protecting all confidential information as provided in Business and Professions Code section 6068, subdivision (e). Subject to Business and Professions Code section 6068, subdivision (e), the member may take such actions as appear to the member to be in the best lawful interest of the organization." (Italics added.) It is evident that the attorney's continuing duty is to the organization he or she represents, even where the organization acts or intends to act improperly.

Subdivision (D) of rule 3-600 of the Rules of Professional Conduct contemplates the difficulties which may arise "whenever it is or becomes apparent that the organization's interests are or may become adverse to those of the constituent(s) with whom the member is dealing." The attorney is obligated to explain to the organization's directors, officers, employees, members, shareholders, or other constituents the identity of the client for whom the attorney is acting, and "shall not mislead such a constituent into believing that the constituent may communicate confidential information to the member in a way that will not be used in the organization's interest if that is or becomes adverse to the constituent." As explained in the discussion following the rule, "In dealing with a close corporation or small association, members commonly perform professional engagements for both the organization and its major constituents. When a change in control occurs or is threatened, members are faced with complex decisions involving personal and institutional relationships and loyalties and have frequently had difficulty in perceiving their correct duty. [Citations.] In resolving such multiple relationships, members must rely on case law."

Each party has brought us one out-of-state case to support the existence or nonexistence of a corporate attorney's duty to a nonclient shareholder. Plaintiff cites *Fassihi* v. *Sommers, Schwartz, Silver, Etc.* (1981) 107 Mich.App. 509 [309 N.W.2d 645], in which a 50 percent shareholder in a two-person professional medical corporation alleged that he had reposed trust and confidence in the corporation's attorney and that the attorney had breached this fiduciary relationship by his role in ousting the shareholder from the corporation. The Michigan court concluded that no attorney-client relationship existed, since the attorney's client was the corporation, not the shareholders. It held, however, that the existence of a confidential relationship apart from a well-defined fiduciary category is a question of fact, and based upon the pleading of a confidential relationship, the court refused to hold that plaintiff's claim was unenforceable as a matter of law. (309 N.W.2d at p. 648.)

The court noted the difficulties which arise in treating a closely held corporation with few shareholders as an entity distinct from its shareholders: "Instances in which the corporation attorneys stand in a fiduciary relationship to individual shareholders are obviously more likely to arise where the number of shareholders is small. In such cases it is not really a matter of the courts piercing the corporate entity. Instead, the corporate attorneys, because of their close interaction with a shareholder or shareholders, simply stand in confidential relationships in respect to both the corporation and individual shareholders." (309 N.W.2d at p. 649.)

The distinction between the *Fassihi* case and the case before us is evident. Plaintiff in this case did not have close interaction, or any interaction at all, with defendant attorneys during the time period in which the legal services sued upon were rendered. The evidence at trial was that after the July 13, 1983, meeting, plaintiff was told by the other shareholders that defendant Comis would prepare the documents to effect the buy out of his shares, and that in August 1983, when plaintiff asked Erlich if the papers were ready, Erlich told plaintiff that *because of their attorney's advice*, he and the two other shareholders had decided not to pay him for his shares, and that no contract would be forthcoming.

There was no contact between plaintiff and defendant Comis regarding the proposed buy out; the initial instructions regarding the drafting of buy out documents were given to Comis by Erlich. Nor was there any basis for plaintiff to place faith, confidence or trust in Comis to protect his interests in regard to this rift among the shareholders, particularly after he was told that it was on the basis of their attorney's advice that the other three shareholders had decided not to pay him for his shares. All the wrongful acts complained of were subsequent to the date he received that information, and he was

completely unaware of any of those acts until after he brought this action. In summary, *Fassihi* is a pleadings case in which there were specific allegations of a relationship of trust and confidence between plaintiff and defendant attorneys. In our case, the evidence at trial established no such relationship of trust and confidence between plaintiff and defendant attorneys which would give rise to a fiduciary duty.

Closer to the facts of this case is the Illinois case relied on by defendants, *Felty* v. *Hartweg* (1988) 169 Ill.App.3d 406 [523 N.E.2d 555]. In *Felty*, an employee and minority shareholder of a closely held corporation sued the corporation's attorney, alleging that the attorney had failed to inform the minority shareholder of fraudulent financial dealings by two corporate officers and majority shareholders which resulted in harm to him as a minority shareholder. In affirming the trial court's dismissal of the action, the appellate court found that the plaintiff had failed to present any authority in which "a corporate attorney, even when representing a closely held corporation, has been held to be implied to have an attorney-client relationship with the shareholders arising from his position as corporate counsel." (523 N.E.2d at p. 556.)

The court rejected plaintiff's assertion that counsel should have known that he was expected to protect the minority shareholders, because that theory would have imposed a duty to a nonclient not authorized by law. In the absence of an actual agreement that the minority shareholders would be beneficiaries of the contract between the attorney and the corporation, the court refused to infer such a relationship. The court relied on an Illinois Supreme Court case, *Pelham* v. *Griesheimer* (1982) 92 Ill.2d 13 [440 N.E.2d 96], which addressed the circumstances in which a nonclient could become a third party beneficiary of a contract between an attorney and another person: "The *Pelham* court pointed out that courts should be reluctant to infer persons to be third-party beneficiaries of an attorney-client contract when they have adverse interests to the person or entity to whom the attorney already has a fiduciary obligation. The court explained that to do so can often put a lawyer in a position of conflicting interests when the lawyer did not intend this to happen. Even in closely held corporations, minority shareholders often have conflicting interests with the corporation." (*Felty* v. *Hartweg*, *supra*, 523 N.E.2d at p. 557.)

We find these concerns to be realistic and consistent with the California Supreme Court's recent indication that it does not intend to undermine the substantial body of law narrowly limiting the right to sue an attorney for malicious prosecution or negligent advice. (*Kimmel* v. *Goland* (1990) 51 Cal.3d 202, 213-214, fn. 10 [271 Cal.Rptr. 191, 793 P.2d 524].) Applying

these principles to the case before us, we conclude that plaintiff had no attorney-client relationship with defendant attorneys, he was not an intended beneficiary of the attorney-client relationship, and certainly had no reason to believe he was intended to be benefited by that relationship, particularly after he was told by Erlich that based on "their attorney's counsel," the majority shareholders would not pay him for his shares. The evidence at trial demonstrates that plaintiff was at that time a potential adverse party whose interests could not be, and were not, represented by his adversaries' chosen counsel, whose duty of loyalty was to his own clients. (See *Schick* v. *Lerner, supra,* 193 Cal.App.3d 1321, 1331.) The fact that defendant Comis could have foreseen the adverse consequences of his advice and its impact on plaintiff is not sufficient justification for fixing liability on him to a noncli-ent shareholder under these circumstances.

Defendants owed no professional duty of care to plaintiff, and in the absence of duty, could not be held liable for professional negligence. (*Goldberg* v. *Frye, supra,* 217 Cal.App.3d 1258, 1267.) The trial court erred in submitting the question of professional negligence to the jury.

## II

### Conspiracy to Defraud

 The attorney defendants contend that, as a matter of law, plaintiff failed to prove a claim against them for conspiracy to defraud because they acted only as legal advisors to the corporation and its officers and not for their own advantage, and because they cannot be liable for conspiring to breach a fiduciary duty that they themselves do not owe plaintiff. Given the evidence in this case, this contention is meritorious.

The record in this case contains substantial evidence that Erlich, Greenblatt, and Potter, the majority shareholders of the corporation, committed the tort of fraudulent concealment. The evidence establishes that they deliberately embarked on a scheme to greatly diminish plaintiff's interest in the corporation by diluting his stock in violation of their fiduciary duty to him as majority shareholders. ██ ██ (See *Jones* v. *H.F. Ahmanson & Co.* (1969) 1 Cal.3d 93, 108 [81 Cal.Rptr. 592, 460 P.2d 464].)[9] It is also

[9]The *Jones* court stated: "[M]ajority shareholders, either singly or acting in concert to accomplish a joint purpose, have a fiduciary responsibility to the minority and to the corporation to use their ability to control the corporation in a fair, just, and equitable manner. Majority shareholders may not use their power to control corporate activities to benefit themselves alone or in a manner detrimental to the minority. Any use to which they put the corporation or their power to control the corporation must benefit all shareholders proportionately and must not conflict with the proper conduct of the corporation's business." (1 Cal.3d at p. 108.)

inferable that the majority shareholders concealed their efforts to dilute plaintiff's stock by intentionally deleting the preemptive rights provision without notice to plaintiff, despite the fact that Comis had advised them that such action could only be taken at a noticed meeting. They clearly had a duty as fiduciaries to act fairly with respect to plaintiff, and, as corporate officers and directors, to notify him of any meeting of shareholders at which his ownership rights would be affected by their actions. The jury could infer that their acts in violation of their duties amounted to a fraud against the plaintiff. As plaintiff was unaware of the majority shareholders' scheme, he was unable to protect his interests, and he suffered damages as the result of their concealment.

The record also contains evidence from which the jury could infer that Comis knowingly participated in the majority shareholders' fraud. He perfected the amendment deleting the preemptive rights provision from the corporate articles knowing that plaintiff was entitled to, but had not been given, notice of the annual shareholders' meeting and of the proposal to amend the corporate articles, and knowing that in fact no annual meeting had been held. We cannot and do not condone these activities. The question, however, is whether a finding of liability can be upheld on the theory under which the case was tried, in light of controlling case law.

 Under the instructions given to the jury, it is clear that the conspiracy to defraud claim was premised solely on a theory of fraudulent concealment.[10] The jury was instructed, under BAJI No. 12.35, that: "Conspiracy to defraud is committed *if any one of the conspirators* conceal [*sic*] or suppressed a material fact. 2. Was under a duty to disclose that fact or facts to the plaintiff. 3. Intentionally concealed or suppressed the fact with the intent to defraud the plaintiff. 4. The plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact. And finally as a result of the concealment or suppression of the fact the plaintiff must have sustained damage."

The jury was further instructed, in accordance with BAJI No. 12.36: "Except as you may otherwise be instructed where material facts are known to one party and not to the other, failure to disclose them is not actionable fraud unless there is some relationship between the parties, *including any of the conspirators* which gives rise to a duty to disclose such known facts. [¶] A duty to disclose known facts arises where the party having knowledge of the facts is in a fiduciary or confidential relationship. [¶] A fiduciary or confidential relationship exists whenever under the circumstances trust and confidence reasonably may be and is repossessed [*sic*] by one person in the

---

[10]Indeed, it does not appear that any other theory of fraud could have been sustained, since there was no evidence that plaintiff relied on anything that Comis did or said.

integrity and fidelity of another." (The italicized portions of these instructions were added by the trial court.)

These instructions delineate a claim for constructive fraud, based on breach of a fiduciary duty to disclose relevant matters arising from a fiduciary relationship. (See *Younan* v. *Equifax Inc.* (1980) 111 Cal.App.3d 498, 516-517 [169 Cal.Rptr. 478].) Both instructions contemplate fixing of liability on a party for conspiracy to defraud based on fraudulent concealment if *any* of the conspirators has a duty of disclosure to plaintiff. That is not a correct statement of legal liability of an agent, under *Doctors' Co.* v. *Superior Court, supra,* 49 Cal.3d 39, 44.

In *Doctors',* a decision filed after trial of this case, the Supreme Court reaffirmed the rule that a cause of action for civil conspiracy may not arise "if the alleged conspirator, though a participant in the agreement underlying the injury, was not personally bound by the duty violated by the wrongdoing and was acting only as the agent or employee of the party who did have that duty." (49 Cal.3d at p. 44.) The issue presented in *Doctors'* was whether an attorney and expert witness retained by an insurer to assist in the defense of an insured against a third party claim could be liable for damages to the claimant for conspiring to violate Insurance Code section 790.03, subdivision (h)(5) which imposes "a [statutory] duty peculiar to the insurer" to attempt in good faith to effect a fair and prompt settlement when liability is reasonably clear.

The court held that the conspiracy claim was barred, explaining: "In the present case, the only duty toward plaintiff claimed to have been breached as a result of the defendants' alleged conspiracy is the statutory duty to attempt 'in good faith to effectuate prompt, fair, and equitable settlement of claims in which liability has become reasonably clear' ([Ins. Code,] § 790.03(h)(5)). That duty is imposed by statute *solely* upon persons engaged in the business of insurance. ([Ins. Code,] § 790.01.) Because the noninsurer defendants are not subject to that duty and were acting merely as agents of the insurer 'and not as individuals for their individual advantage' (*Wise, supra,* 223 Cal.App.2d at p. 72), 'they cannot be held accountable on a theory of conspiracy.' (*Gruenberg* [v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566] at p. 576.)" (49 Cal.3d at p. 45, italics in original.)

The court in *Doctors'* recognized exceptions to this limitation of liability. Conspiracy liability may properly be imposed on nonfiduciary agents or attorneys for conduct which they carry out not simply as agents or employees of fiduciary defendants, but in furtherance of their own financial gain. (*Doctors' Co.* v. *Superior Court, supra,* 49 Cal.3d at pp. 46-47; see *Black* v. *Sullivan* (1975) 48 Cal.App.3d 557, 567 [122 Cal.Rptr. 119].) A

conspiracy claim against an attorney is also proper if the attorney who conspires with a client to injure another violates his or her *own* duty to the plaintiff. (*Doctors' Co.* v. *Superior Court, supra,* 49 Cal.3d at p. 47; see *Barney* v. *Aetna Casualty & Surety Co.* (1986) 185 Cal.App.3d 966 [230 Cal.Rptr. 215]; *Ivy* v. *Pacific Automobile Ins. Co.* (1958) 156 Cal.App.2d 652, 663 [320 P.2d 140].)

Finally, the court noted that the limitation of conspiracy liability does not apply to "corporate directors and officers who directly order, authorize or participate in the corporation's tortious conduct. Such persons may be held liable, as conspirators or otherwise, for violation of their own duties towards persons injured by the corporate tort. [Citation.] The *Gruenberg-Wise* rule, in contrast, precludes only claims against the principal's subordinate employees and against agents retained by the principal to act as independent contractors . . . for conspiring to violate a duty peculiar to the principal." (*Doctors' Co.* v. *Superior Court, supra,* 49 Cal.3d at p. 48.) None of these exceptions, nor any other suggested by plaintiff, is applicable to this case.

At oral argument on rehearing, plaintiff conceded that this case does not fall within the exception that permits conspiracy liability when a defendant agent who has no personal duty to the plaintiff acts as an individual for his or her own individual advantage rather than solely on behalf of the principal. (See *Black* v. *Sullivan, supra,* 48 Cal.App.3d 557, 567; *Doctors' Co.* v. *Superior Court, supra,* 49 Cal.3d at p. 46.) As we have pointed out (see fn. 6, *ante*), Comis and his law firm received only modest compensation for their services.

As to the existence of a personal duty of disclosure, it is undisputed that Comis was neither a shareholder in the corporation, nor a corporate officer or director. He therefore did not share the fiduciary duty owed by the three majority shareholders to plaintiff as a minority shareholder. (See *Jones* v. *H.F. Ahmanson & Co., supra,* 1 Cal.3d 93, 108.) As we explained in part I of this opinion, Comis had no attorney-client relationship with plaintiff which would give rise to a fiduciary relationship, and he had no professional duty to plaintiff as a nonclient. There was no basis for plaintiff to place special trust or confidence in Comis, or for him to rely on Comis to act in his best interest in relation to the corporation or the other shareholders. Nor was there any evidence that he did so.

Plaintiff failed to establish that Comis had a fiduciary relationship with him upon which to base a duty of disclosure. Under the facts of this case, any duty to disclose the concealed or suppressed information regarding actions taken to dilute plaintiff's shareholders' interest in the corporation

was "peculiar" to Erlich, Greenblatt, and Potter, who, as majority shareholders, had a fiduciary duty to plaintiff as minority shareholder. Comis, as attorney for the corporation, had no personal duty to disclose the facts intentionally concealed. Indeed, the same would be true even if Comis were regarded as attorney for the majority shareholders in addition to, or instead of, counsel for the corporation.[11]

Absent either an individual duty to the plaintiff or a personal financial interest in the matter, under the authority of *Doctors' Co.* v. *Superior Court, supra,* 49 Cal.3d 39, Comis cannot be held accountable on a theory of conspiracy to conceal based on his actions as attorney for the corporation or for the majority shareholders. (See also *Cooper* v. *Equity Gen. Insurance* (1990) 219 Cal.App.3d 1252, 1258-1262 [268 Cal.Rptr. 692].)

Plaintiff suggests that liability exists because Comis breached the general duty that everyone has to refrain from intentionally tortious conduct which causes injury to the person or property of another. (*Cicone* v. *URS Corp.* (1986) 183 Cal.App.3d 194, 201 [227 Cal.Rptr. 887]; *Younan* v. *Equifax Inc., supra,* 111 Cal.App.3d 498, 511.) We disagree.

Under this general duty, an attorney who conspires with a client to defraud a third party and who commits *actual* fraud in pursuit of the conspiracy may be liable for conspiracy to defraud. In that situation, liability is premised on the breach of the attorney's personal duty to abstain from harming another by false misrepresentation, a duty independent of the client's duty. (See *Doctors' Co.* v. *Superior Court, supra,* 49 Cal.3d at p. 48; *Younan* v. *Equifax Inc., supra,* 111 Cal.App.3d at pp. 512-513.) But an attorney will not be liable for conspiracy to commit *constructive* fraud where that charge rests on a fiduciary duty of disclosure owed only by the client. (*Doctors' Co.* v. *Superior Court, supra,* 49 Cal.3d at p. 48; *Younan* v. *Equifax Inc., supra,* 111 Cal.App.3d at pp. 516-517.)

This case was not tried on a theory of actual fraud; the jury was only instructed on a theory of constructive fraud, premised on fraudulent concealment where there was a duty to disclose. Liability was not based on a conspiracy to breach the general duty to abstain from actual fraud, but on a conspiracy to breach the fiduciary duty of disclosure, and Comis had no personal duty to disclose.

---

[11]Plaintiff argues that if Comis conspired with the majority shareholders, *Doctors'* does not apply, since Comis was not conspiring with the corporation, which was his client, but with third parties. We find two problems with this argument. First, the majority shareholders were also the corporation's officers. More importantly, whether Comis acted solely on behalf of the corporation or also on behalf of the majority shareholders, he was at all times acting as agent and the duty violated was peculiar to the principal.

Because we find no duty upon which a claim for professional negligence can be based, and because the record does not support imposition of liability against Comis for conspiracy to defraud, the judgment in favor of plaintiff must be reversed.

## DISPOSITION

The judgment is reversed and the trial court is directed to enter judgment in favor of defendants. Defendants are to recover their costs on appeal.

Woods (A. M.), P. J., and George, J., concurred.

Respondent's petition for review by the Supreme Court was denied October 17, 1991. George, J., did not participate therein. Mosk, J., was of the opinion that the petition should be granted.