[No. H017715. Sixth Dist. June 26, 1998.]

NATIONAL FOOTBALL LEAGUE PROPERTIES, INC., et al.,
Petitioners, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
OAKLAND RAIDERS, Real Party in Interest.

**COUNSEL**

Ruby & Schofield, Allen Ruby, Glen Schofield, McCutchen, Doyle, Brown & Enersen, James P. Kleinberg, Cecily T. Talbert and Michael T. Pyle for Petitioners.

No appearance for Respondent.

Howard, Rice, Nemerovski, Canady, Falk & Rabkin, Kenneth G. Hausman, Annette L. Hurst, David M. Middler, Joseph L. Alioto and Jeffrey E. Birren for Real Party in Interest.

**OPINION**

**PREMO, Acting P. J.—**

### I.  INTRODUCTION

The Oakland Raiders (hereafter, Raiders) football club has sued the National Football League (hereafter, NFL), National Football League Properties, Inc. (hereafter, NFLP), and many other NFL-related entities and

persons, generally alleging that NFL management's wrongful control of the NFL entities has resulted in a breach of fiduciary duty and adverse treatment of the Raiders. During litigation, a discovery dispute arose concerning the Raiders' right to inspect the corporate documents of NFLP, which are protected by the attorney-client privilege.

Respondent court ordered NFLP to produce its attorney-client privileged documents to the Raiders on grounds that the club has a director's right of inspection. NFLP objected to the order, and filed a petition for writ of mandate arguing that the Raiders club is a shareholder which does not have a right to inspect corporate documents which are protected by the attorney-client privilege.[1] We agree with NFLP, and therefore issue a peremptory writ of mandate directing respondent court to vacate that portion of its discovery order which compels production of attorney-client privileged documents by NFLP.

## II. Factual and Procedural Background

### A. *National Football League Properties, Inc.*

This matter arises from the complex web of for-profit and nonprofit organizations which carry out the business of the NFL and its member teams. In this decision, we focus upon one of the for-profit entities, NFLP, and its relationship to a member team, the Raiders. Our understanding of this relationship is assisted by an outline of these organizations and the NFL.

The NFL is an unincorporated nonprofit association with its principal place of business in New York City. The members of the association are 30 football clubs, including the Raiders. The Raiders club is a California limited partnership with its principal place of business in Oakland.

NFLP is the for-profit merchandising arm of the NFL. It is a California corporation doing business in California, with its principal place of business in New York City. Each of the 30 NFL member clubs, including the Raiders, is an equal shareholder of NFLP. Each club also has a licensing agreement with NFLP for the purpose of licensing third parties to use the club's symbols, colors, etc., in the sale of merchandise.

Additionally, each club designates a director to serve on NFLP's board of directors. The Raiders' executive assistant, Al LoCasale, has been designated by the Raiders to serve on the NFLP board. In NFL parlance, NFLP is

---

[1]The petitioners in this writ proceeding are: NFLP, NFL Enterprises, Inc., NFL Enterprises L.P., World League of American Football, World League of American Football, L.P., and World League of American Football, Inc.

an NFL "affiliate" organization, which was formed apart from the NFL for tax purposes.

## B. *The Raiders' Lawsuit*

In February 1996, the Raiders filed its original complaint. At the time of the discovery motions at issue here, the operative pleading was the second amended complaint, filed in February 1997.[2] The second amended complaint (hereafter, the complaint) names 22 defendants, including the NFL, 16 member clubs, and 6 affiliated organizations (including NFLP). Two individuals, Paul Tagliabue and Neil Austrian, are also named defendants.

The complaint includes 16 causes of action, based on allegations of breach of contract, breach of fiduciary duty, and negligence and mismanagement, as to all defendants. The complaint also seeks an accounting, money had and received, and injunctive and declaratory relief.

The gravamen of the complaint is the Raiders' claim that the NFL commissioner, Paul Tagliabue, and the NFL president, Neil Austrian, have wrongfully established control over a majority of the member clubs and the affiliate organizations, and that they have used that control to treat the Raiders adversely.

With regard to NFLP, the Raiders' claims include a shareholder's derivative action alleging that NFLP has breached its fiduciary duty to its shareholders. The Raiders contend that NFLP's breach consists of its submission to the wrongful control of Tagliabue and Austrian, and also its mismanagement of licensing and merchandising operations.[3] The Raiders also allege, nonderivatively, that NFLP breached the licensing agreement by taking actions which diminished the Raiders' ability to profit from its trademarks.

## C. *Discovery Proceedings Before the Referee*

During the course of the litigation, the Raiders filed a motion for inspection of nearly all of the documents which had been withheld by the NFL defendants on grounds of attorney-client privilege and work product doctrine. The withheld documents included 248 documents listed on the NFL defendant's interim privilege log of July 1997.

---

[2]We have been advised by the Raiders that a third amended complaint was filed during the pendency of these writ proceedings.

[3]The causes of action against NFLP include shareholder derivative claims of breach of fiduciary duty, negligence and mismanagement, and fraud and conspiracy, as well as nonderivative claims for breach of the licensing agreement, trademark dilution, and for an accounting.

According to the privilege log, many of the withheld documents are addressed to or from in-house and/or outside counsel and various personnel of the NFL and its affiliated organizations, including NFLP, and concern legal issues. The Raiders' motion for inspection of these documents was heard before the discovery referee. The Raiders argued that it is entitled to inspection of all withheld documents, because the club is within the attorney-client privilege for all documents regarding ordinary operations of the NFL and its affiliated for-profit entities.

In his decision and order of September 8, 1997, the discovery referee concluded that (1) attorney-client communications between the NFL commissioner, president, and staff regarding the operations of the NFL were privileged and need not be produced by the NFL defendants; (2) attorney-client communications between the League office (described by the referee as consisting of the commissioner, president, and staff of the NFL) and the NFL affiliated entities were not protected by the attorney-client privilege because the League office acted as an officer or managing agent of the member clubs; (3) defendants should produce the documents for which only the work product doctrine was asserted for in camera review; (4) the minutes of meetings of the board of directors and the executive committee cannot be withheld from the directors and shareholders of the affiliated organizations; and (5) documents provided at meetings of the NFL's executive committee meetings may not be withheld as privileged because such documents were not intended to be confidential.

Neither side was completely satisfied with the referee's decision and order, and both filed motions in respondent court seeking revisions in their favor.

## D. *Discovery Proceedings in Respondent Court*

The NFL defendants filed a motion for review of the referee's decision and order, seeking reversal of that portion of the decision which compelled production of the attorney-client communications of the NFL affiliate entities, including NFLP. The Raiders filed a "cross-motion" seeking reversal of those portions of the referee's recommendation which limited the club's right to inspect NFL-only documents.

Respondent court issued an extensive order dated November 14, 1997, which explained its reasoning in essentially adopting the referee's recommendations. First, respondent court concluded that communications between the League office and its attorneys relating solely to operations of the NFL are protected by the attorney-client privilege, because the commissioner and

his staff must be able to consult attorneys on NFL business without fear that the competitive member clubs will be able to obtain privileged information regarding other clubs which they could use for their own benefit. The court therefore ordered that such communications need not be produced by defendants.

Second, respondent court ruled that all documents reflecting communications between any person associated with the affiliated entities, including NFLP, and the entities' attorneys, must be produced even if the documents are protected by the attorney-client or work product privileges. The court reasoned that the Raiders club is a member, director, and shareholder of NFLP, which gives it the right to examine privileged documents. Further, the court concluded that "the Commissioner and the League office employees act as agents when they negotiate contract[s] through NFLP on behalf of the member clubs. The Commissioner and the League office are the 'authorized representatives' of the member clubs under Evid. Code [section] 951. They cannot claim to have a separate interest from the member clubs as they with [*sic*] the NFL itself." The court also stated: "California courts have held that a director's right to inspect includes attorney-client communications made concerning partnership [*sic*] business."

The court excepted from production those privileged documents containing legal advice to individuals, or dealing with member club-specific information, and also permitted redaction of information pertaining to NFL operations. The court adopted the referee's decision in all other respects.

The affiliated entities, including the NFLP, filed a petition for writ of mandate seeking extraordinary relief from those portions of respondent court's order of November 14, 1997, which compel production of their attorney-client privileged documents to the Raiders. We issued an alternative writ directing the Raiders to show cause why a peremptory writ should not issue to vacate that part of respondent court's order which compels production of attorney-client privileged documents by NFLP. The petition for writ of mandate was denied in all other respects.

### III. DISCUSSION

#### A. *Standard of Review*

We review respondent court's discovery order only to determine if an abuse of discretion has occurred. Management of discovery lies within the sound discretion of the trial court; where there is a basis for the trial court's ruling and it is supported by the evidence, a reviewing court will not

substitute its opinion for that of the trial court. (*Lipton* v. *Superior Court* (1996) 48 Cal.App.4th 1599, 1612 [56 Cal.Rptr.2d 341].) Although writ review of discovery orders is disfavored, such review is appropriate when petitioner seeks extraordinary relief from a discovery order which may undermine a privilege. (*Raytheon Co.* v. *Superior Court* (1989) 208 Cal.App.3d 683, 686 [256 Cal.Rptr. 425].)

### B. *The Corporate Attorney-client Privilege*

Since NFLP is a California corporation, California law applies to resolve an issue of attorney-client privilege. (See, e.g., *Hoiles* v. *Superior Court* (1984) 157 Cal.App.3d 1192 [204 Cal.Rptr. 111]; hereafter, *Hoiles.*) The specific issue is whether the Raiders club, as a plaintiff in a shareholder's suit against the corporation, has the right to inspect NFLP documents which are protected by the attorney-client privilege.

█ Pursuant to the Evidence Code, a corporation is a person whose confidential communications with its attorney are protected by the attorney-client privilege. (Evid. Code, §§ 175, 953, subd. (d); *D.I. Chadbourne, Inc.* v. *Superior Court* (1964) 60 Cal.2d 723, 732 [36 Cal.Rptr. 468, 388 P.2d 700]; *Hoiles, supra,* 157 Cal.App.3d at p. 1198.) Although shareholders have some rights to corporate information which are not enjoyed by the general public, "shareholder status does not in and of itself entitle an individual to unfettered access to corporate confidences and secrets." (*Goldstein* v. *Lees* (1975) 46 Cal.App.3d 614, 621 [120 Cal.Rptr. 253].)[4] In California, the appellate courts have refused to carve out a shareholder exception to the statutory attorney-client privilege accorded to corporations, noting that the Evidence Code precludes judicially created exceptions to the attorney-client privilege. (Evid. Code, § 911; *Hoiles, supra,* 157 Cal.App.3d at p. 1197.)

Accordingly, California courts have declined to adopt the federal rule set forth in *Garner* v. *Wolfinbarger* (5th Cir. 1970) 430 F.2d 1093, which permits shareholders to inspect corporate attorney-client privileged documents upon a showing of good cause. (See also *Dickerson* v. *Superior Court* (1982) 135 Cal.App.3d 93, 99 [185 Cal.Rptr. 97]; *Hoiles, supra,* 157 Cal.App.3d at p. 1198; but see *Goldstein* v. *Lees, supra,* 46 Cal.App.3d at p. 622 [noting the *Garner* rule in dictum].)

Thus, there is no shareholder exception to the corporate attorney-client privilege in California. Instead, the general rule has been stated as follows:

---

[4]Corporations Code section 1601 provides that shareholders may inspect certain corporate records, including the accounting books and records and minutes of the proceedings of shareholders, board and committees of the board, for a purpose reasonably related to the holder's interest as a shareholder.

"An attorney representing a corporation does not become the representative of its stockholders merely because the attorney's actions on behalf of the corporation also benefit the stockholders; as attorney for the corporation, counsel's first duty is to the corporation." (*Skarbrevik v. Cohen, England & Whitfield* (1991) 231 Cal.App.3d 692, 703 [282 Cal.Rptr. 627].)

Thus, "[e]ven where counsel for a closely held corporation treats the interests of majority shareholders and the corporation interchangeably, it is the attorney-client relationship with the corporation that is paramount for purposes of upholding the attorney-client privilege against a minority share-holder's challenge." (*Skarbrevik v. Cohen, England & Whitfield, supra,* 231 Cal.App.3d at p. 704.) Decisions holding that corporation attorneys stand in a fiduciary relationship to individual shareholders have relied upon a finding that the attorneys stood in a confidential relationship with respect to both the corporation and the individual shareholders, and not upon a rationale for piercing the corporate attorney-client privilege. (*Id.* at p. 705.)

In addition to showing an independent attorney-client relationship with corporate counsel, a shareholder may also argue, as a basis for inspecting privileged corporation documents, the Evidence Code section 956 crime-fraud exception. Under Evidence Code section 956, the attorney-client privilege is nullified if the attorney's services were sought to aid anyone in the commission of a crime or fraud. (*Dickerson v. Superior Court, supra,* 135 Cal.App.3d at p. 100.)

C. *Respondent Court Abused Its Discretion in Ordering NFLP to Produce Documents Protected by the Corporate Attorney-client Privilege*

■ We find that the court abused its discretion in ordering production of NFLP documents protected by the corporate attorney-client privilege absent a prima facie showing that either (1) the Raiders enjoyed an independent attorney-client relationship with corporate counsel, or (2) the services of NFLP's attorneys were sought for a fraudulent purpose.

Instead, respondent court deemed that the privileged documents were discoverable because (1) corporate directors have the statutory right to inspect all documents concerning "partnership business," and (2) the NFL commissioner and NFL office, through NFLP, acted as the Raiders' agent in negotiating merchandising contracts. In so ruling, respondent court erred by erroneously assuming that the Raiders club is a director of NFLP, and by misinterpreting the Evidence Code regarding the authorized representative of a legal client.

With regard to a director's right of inspection, respondent court stated that "California courts have held that a director's right to inspect includes

attorney-client communications concerning partnership [*sic*] business," citing *Wortham & Van Liew* v. *Superior Court* (1987) 188 Cal.App.3d 927 [233 Cal.Rptr. 725]and *McCain* v. *Phoenix Resources, Inc.* (1986) 185 Cal.App.3d 575 [230 Cal.Rptr. 25]. However, these decisions do not so hold. In *Wortham & Van Liew*, the court held that an attorney for a partnership may not withhold from one partner important information received from another partner regarding partnership business on grounds of attorney-client privilege. (188 Cal.App.3d at p. 929.) The decision solely concerned the application of the attorney-client privilege in the partnership context, and did not involve a director's right to inspect. (*Id.* at pp. 932-933.)

Likewise, the court in *McCain* ruled only upon the issue of a limited partner's right to inspect attorney-client privileged documents of the partnership. (185 Cal.App.3d at p. 577.) No issues of a director's right to inspect or the corporate attorney-client privilege were addressed in *McCain*. Accordingly, the decisions in *Wortham & Van Liew* and *McCain* do not stand for the proposition that a director has the right to inspect corporate documents which are protected by the attorney-client privilege.

Most importantly, the discovery dispute between NFLP and the Raiders cannot be resolved by looking to a director's right to inspect corporate records. No NFLP director is a party to this dispute. Al LoCasale, the Raiders' representative on NFLP's board of directors, stated in his declaration that, "I assert the *Raiders' right* to inspect the documents at issue . . . ." (Italics added.) In so stating, Mr. LoCasale is clearly not asserting his own *right as a director* of NFLP to inspect corporate documents. Instead, he is speaking as a representative of the Raiders, on behalf of discovery sought by the Raiders club in its capacity as a shareholder of NFLP.

Corporations Code section 1602 provides that "[e]very director shall have the absolute right at any reasonable time to inspect and copy all books, records and documents of every kind and to inspect the physical properties of the corporation of which such person is a director . . . ." (See *Havlicek* v. *Coast-to-Coast Analytical Services, Inc.* (1995) 39 Cal.App.4th 1844, 1849 [46 Cal.Rptr.2d 696].) However, the decision in *Havlicek* did not involve any issues of attorney-client privilege. While a director may be entitled to review corporate legal documents, where the director sues in his capacity as a shareholder, rather than a director, the attorney-client and work product privileges are properly upheld by the corporation. (*Hoiles*, *supra*, 157 Cal.App.3d at pp. 1201-1202.)

In the present case, it is clear that Mr. LoCasale has not sued the NFLP in his capacity as a director. He therefore cannot put on his director's hat and

request privileged corporate documents which he intends to pass on to a shareholder, the Raiders, for use in litigation against the corporation. Such an act would be inconsistent with his fiduciary duty to the corporation. (See Corp. Code, § 309, subd. (a); *Hoiles, supra,* 157 Cal.App.3d at p. 1201.) For the same reason, he cannot delegate his director's right of inspection to the Raiders. Thus, we reject the Raiders' argument that the club is entitled, either as a "member" of the NFLP board of directors, or as an "agent" of director LoCasale, to inspect NFLP's attorney-client privileged documents.[5]

We also must reject the Raiders' argument that the club otherwise has standing to inspect NFLP documents protected by the corporate attorney-client privilege because, as the Raiders states in its brief, "those who own and run a business have the right to complete information concerning the venture." The Raiders' argument is similar to that made by the plaintiff shareholder and rejected by the court in *Hoiles*: "We are told, for example, owners and managers are usually the same people in both entities and a corporation has no independent interest in its continued existence beyond the desires of its several owners. Consequently, as to them, a corporation's separate legal identity is meaningless and the attorney-client privilege should not exist." (157 Cal.App.3d at p. 1198.)

In support of their similar position, the Raiders cite federal and out-of-state decisions which have permitted disclosure of corporate attorney-client privileged documents to shareholders who are concerned with corporate mismanagement. (See, e.g., *Beard* v. *Ames* (1983) 96 A.D.2d 119 [468 N.Y.S.2d 253, 255]; *Garner* v. *Wolfinbarger, supra,* 430 F.2d at pp. 1103-1104.) However, as we have previously discussed, California courts cannot expand upon the statutory privileges set forth in the Evidence Code by creating a shareholder exception to corporate attorney-client privilege, or adopt the federal *Garner* rule permitting shareholder inspection upon a showing of good cause.

The Raiders also argue that good cause exists to support their inspection of privileged documents, because the club contends that fraud and conspiracy occurred at NFLP. However, review of the record below reveals that the Raiders failed to make a prima facie showing that the services of NFLP's attorneys were sought by the corporation in order to commit a crime or fraud. Accordingly, NFLP's corporate attorney-client privilege is not nullified by the Evidence Code section 956 crime-fraud exception.

Similarly, the Raiders have not shown that the club enjoys an independent attorney-client relationship with NFLP's corporate counsel. As discussed

---

[5]A director of a corporation must be a natural person, pursuant to Corporations Code section 164.

above, the fact that the services of a corporation's attorneys also benefits the shareholders is not sufficient to establish a confidential fiduciary relationship between corporate counsel and a shareholder. (*Skarbrevik* v. *Cohen, England & Whitfield, supra,* 231 Cal.App.3d at p. 702.)

We also observe that respondent court misinterpreted the term "authorized representative" in Evidence Code section 951, when it stated that "The Commissioner and the League office employees act as agents when they negotiate contract[s] through NFLP on behalf of the member clubs. The Commissioner and the League office are the 'authorized representatives' of the member clubs under Evid. Code [section] 951."

Evidence Code section 951 provides that " 'client' means a person who, directly or through an authorized representative, consults a lawyer for the purpose of retaining the lawyer or securing legal service or advice . . . ." It is apparent from the plain language of the statute that "authorized representative" means a person who is authorized to obtain legal advice on the client's behalf. For example, a corporation president may be authorized to obtain legal advice for the corporation as the corporation's authorized representative.

Respondent court appears to confuse representation for purposes of seeking legal advice, with representation for the purpose of negotiating contracts. The two forms of representation are not the same. Representation for purposes of negotiating a contract obviously does not constitute representation for purposes of obtaining legal advice, and cannot serve as a basis for piercing the corporate attorney-client privilege.

Finally, we address the Raiders' argument that petitioners lacked standing to bring the instant petition because they are officers who were not authorized by the board of directors to withhold corporate documents from another director, the Raiders club. We agree with petitioners that NFLP's officers are entitled to assert the corporation's attorney-client privilege. (See, e.g., *Moeller* v. *Superior Court* (1997) 16 Cal.4th 1124, 1135 [69 Cal.Rptr.2d 317, 947 P.2d 279].) We have also previously rejected the Raiders' argument that the club is a "director" of NFLP. Therefore, we decline to dismiss the petition for writ of mandate on grounds that petitioners lacked standing to file the petition.

## IV. Disposition

Let a peremptory writ of mandate issue directing respondent court to vacate that portion of its order of November 14, 1997, which compels

production of attorney-client privileged documents by petitioner National Football League Properties, Inc., and to enter a new and different order denying the Oakland Raiders' discovery motion with respect to the production of attorney-client privileged documents by petitioner. Each party to bear its own costs in this writ proceeding.

Elia, J., and Wunderlich, J., concurred.