[No. D005116. Fourth Dist., Div. One. Jan. 15, 1987.]

WORTHAM & VAN LIEW et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
B. DARRYL CLUBB, Real Party in Interest.

928

**COUNSEL**

Lindley, Lazar & Scales, Michael H. Wexler and Richard C. Fridell for Petitioners.

No appearance for Respondent.

Luce, Forward, Hamilton & Scripps, Scott W. Sonne and Valentine S. Hoy VIII for Real Party in Interest.

OPINION

**TODD, J.**—May the attorney for a partnership withhold from a partner important information received from another partner concerning partnership transactions claiming the information is confidential under the attorney-client privilege? We hold the joint-client rule of Evidence Code[1] section 962 removes these communications from the protection of the attorney-client privilege. The attorney must divulge all partnership information to all partners.

Petitioners seek a writ of prohibition to prevent enforcement of a trial court discovery order compelling attorney Lawrence T. Dougherty to answer questions about allegedly privileged matters. The trial court applied section 956 (fraud exception to the lawyer/client privilege) and section 962 (joint-client exception) and concluded the communications were not privileged. We conclude the trial court did not abuse its discretion in finding the joint-client exception applied; therefore we deny the writ.

Real party Clubb brought the underlying lawsuit seeking dissolution and accounting of partnership, declaration of constructive trust, injunctive relief and damages against petitioners. He sues petitioners Wortham & Van Liew, a Texas general partnership, and its individual general partners, petitioners Jeffere F. Van Liew and R. W. Wortham III, as well as several limited partnerships associated with the development of the north San Diego County project known as North Coast Business Park.

Clubb alleges he originally agreed orally with Van Liew to purchase and develop the North Coast property jointly, sharing equally in the ownership and profits. Clubb was to receive a 6 percent development fee for his efforts. Later, he claims, he was "forced" to include defendant R. W. Wortham as a partner and to accept a lesser, one-third share interest in the project. Then, because Van Liew and Wortham did not fulfill their obligations to provide timely financing, it became necessary to add more limited partners, thereby further diluting Clubb's share in the project. Finally, on February 27, 1981, Clubb, Wortham and Van Liew signed a written joint venture agreement to develop the North Coast property into a business park, and pursuant to this agreement on March 3, 1981, further formed a limited partnership known as "North Coast Business Park Associates, Ltd." (hereafter NC I), under which arrangement Clubb received a 15 percent equity interest in the property.

Some time in June or July 1983, Clubb continues, in breach of their fidu-

---

[1] All statutory references are to the Evidence Code unless otherwise specified.

ciary obligations to him, Wortham and Van Liew formed a new partnership known as North Coast II (NC II), in which Clubb had no interest, and conveyed to it title to the improved North Coast property. They thereby deprived Clubb of his entire interest in the property to which he had devoted his full time and efforts for several months, as well as advancing expenses out of his own pocket. Further, by this transfer defendants increased their proportionate interests in this property.

Clubb contends the transfer was done without his authority, consent or knowledge, in violation of specific provisions of the joint venture agreement and the NC I partnership agreement. He states the following specific violations: failure to contribute cash amounts sufficient to prevent negative cash flow deficits of NC I; transferring the real property without Clubb's consent in violation of specific paragraphs of the joint venture agreement; sale of the property, the principal asset of NC I, without prior written consent of a majority in interest of the limited partners of that partnership; engaging in acts which made it impossible to carry on the intended purposes and ordinary business of NC I; sale of the real property from the first to the second partnership for $17.65 million when in fact it was worth at least $25 million; and failure to make a full accounting.

Paragraph 10.06(d) of the first partnership agreement states the general partner may not sell the North Coast property without the prior written consent of a majority in interest of the limited partners. It further provides the general partner may not sell this property to any affiliate or entity in which the general partner owns more than 5 percent of the beneficial interest without consent of limited partners holding 80 percent of the total percentage interest held by all the limited partners.

During the discovery proceedings in this matter, Clubb moved for an order compelling discovery (Code Civ. Proc., § 2034, subd. (a)). He wished to order deponent Lawrence T. Dougherty, an attorney, to disclose information about the two partnerships, NC I and NC II, which he withheld during his deposition. Dougherty relied on the attorney-client privilege, but Clubb claimed the fraud and joint client exceptions applied (§§ 956 and 962). Specifically, Clubb wished to compel answers to questions and communications Dougherty had with others pertaining to NC I and/or the general and limited partners of that partnership while he was counsel for that partnership, and all communications concerning the formation of NC II and the transfer of North Coast Business Park to NC II. Clubb alleged after formation of NC I, Dougherty was general counsel to the partnership. He remained in that relationship when in July 1983 Van Liew allegedly unilaterally transferred the business park to the second partnership. Dougherty allegedly played a "key role" in that transfer and the formation of the new partnership. As

counsel for NC I, he had numerous communications with Van Liew regarding the latter's intent to form a new partnership, and he later became counsel for NC II. At his deposition, he refused to answer questions about his communications with Van Liew or others regarding the transfer. Dougherty refused to answer questions about events after July 1, 1983, when NC II came into being, including discussions about the transfer and the sales price of the property.

In opposing the discovery motion, defendants denied Clubb's version of the transaction and claimed sale of the property became necessary because of Clubb's derelictions in managing the venture and otherwise executing his duties, and also claimed the transfer of the property on July 14, 1983, was in accordance with the terms of all agreements. In addition, they contended the attorney-client privilege protects against disclosure of Dougherty's confidential communications with his clients out of Clubb's presence. They relied on the decision in *Glade* v. *Superior Court* (1978) 76 Cal.App.3d 738 [143 Cal.Rptr. 119], claiming it stands for the inapplicability of the joint-client exception when the attorney communicates with one joint client out of the presence of the other. They further alleged the answers which Dougherty withheld all pertain to such private communications, which were intended to be confidential, and which were made when Dougherty was the attorney for the parties who made the communications (Wortham, Van Liew, and Michael I. Crain, who was involved with the formation of NC II). Finally, they argued Clubb had not made a sufficient prima facie showing of fraud to justify applying the fraud exception to the privilege.

Defendants proffered declarations in support of their opposition to the motion, including that of Michael I. Crain saying he indirectly owns a general partnership interest (9 percent) in NC II; he was associated with the transactions resulting in the formation of NC II and the transfer of the property to it; and all communications between Crain and Dougherty outside the presence of Clubb regarding the general legal affairs of NC I and NC II, the formation of NC II, and the transfer of the property from NC I to NC II, were confidential communications, especially communications which related to disputes or controversies with Clubb.

## Discussion

In our view, although the attorney-client privilege is important, even more important is that relationship which the privilege is intended to protect, namely the relationship of an attorney to his client and his fiduciary obligations to his client. Here, as counsel for the first partnership, Dougherty was Clubb's attorney. His fiduciary obligations to Clubb, in our view, required his disclosing to his client all matters concerning the partnership,

including, clearly, the formation of a second entity and the transfer of partnership property to it under circumstances claimed to be in breach of fiduciary obligations and fraudulent. Accordingly, we view the trial court order as correct in compelling answers to the questions on the basis of the joint-client exception, and we do not discuss the other basis for the ruling, namely the fraud exception.

Clubb has relied heavily here on *Glacier Gen. Assurance Co.* v. *Superior Court* (1979) 95 Cal.App.3d 836 [157 Cal.Rptr. 435], applying the joint-client exception to mandate access of the insured to communications between the insurer and their joint attorney, regardless of whether such communications were made out of the insured's presence and intended to be confidential as to him. ■ The *Glacier* decision points out no case directly limits the joint-client exception to situations where communications were made in the presence of both clients (a construction which would trivialize the exception) and further said the insurer could not hide from the insured matters of common interest regarding settlement without breaching its obligations to its insured. (*Id.*, at p. 841.) The decision stands for the proposition the exception of section 962 is intended to provide joint clients access to communications with the jointly retained attorney which touch on matters affecting both clients.

■ In the context of the representation of a partnership, the attorney for the partnership represents all the partners as to matters of partnership business. Further, partners owe to one another, and general partners owe to limited partners, obligations of good faith, fair dealing. All partners are entitled to access to a wide range of partnership information, whether or not that information is generated under the aegis of the partnership's attorney. ■ " . . . [T]he attorney-client privilege will not bar disclosure of matters related to a partnership business simply because such business was conducted through a law firm." (*McCain* v. *Phoenix Resources, Inc.* (1986) 185 Cal.App.3d 575, 581 [230 Cal.Rptr. 25].) Only matters involving *purely private* or *personal interests* of one of the partners may be privileged. (*Ibid.*) The *McCain* decision analyzed the broad rights of access to information of limited partners.[2] The rights of general partners, such as Clubb, are similarly broad.[3]

■ " . . . [L]egal counsel provided to the partnership is intended to and

[2](See new revised Uniform Limited Partnership Act, Corp. Code, § 15611 et seq., specifically §§ 15615, 15634, and former 15510, subd. (1)(b).)

[3](See Corp. Code, § 15020: "Partners shall render on demand true and full information of all things affecting the partnership to any partner or the legal representative of any deceased partner or partner under legal disability"; see also Corp. Code, § 15021 regarding right of a partner to an accounting.)

does assist each and every general partner to fulfill his joint management duties." (*Lasky, Haas, Cohler & Munter* v. *Superior Court* (1985) 172 Cal.App.3d 264, 284 [218 Cal.Rptr. 205].) This conclusion rests on the equal rights and responsibilities of such partners including their authority to bind the partnership, resolve disputes by vote, and otherwise carry out partnership business. (Corp. Code, §§ 15010, 15018, 15009, subd. (1).)

The dictum in *Glade* v. *Superior Court, supra,* 76 Cal.App.3d 738, relied on by petitioners, does not hold, as they assert, the joint client must be present during communications relating to the *joint client business,* for the exception to apply. Such a holding would in fact be nonsense in that the client, being present, would have little need to compel revelation of the communication and any privilege would have been waived. (See *Glacier Gen. Assurance Co.* v. *Superior Court, supra,* 95 Cal.App.3d at p. 841.)

*Glade*'s dictum was based, in part, on its interpretation of language in *Petty* v. *Superior Court* (1953) 116 Cal.App.2d 20 [253 P.2d 28]. However, in *Petty,* neither of the (formerly) joint clients claimed there were any confidential communications with the attorney with only one client present. Further, the issue in *Petty* was not disclosure, but whether the lawyer was free to represent one of his former clients against the other.

To the extent that *Glade*'s proposition may be correct where a partner confers privately with a partnership lawyer on matters not material to the partnership, it is irrelevant here. Although these communications may have been actually intended to be confidential, they cannot be so legitimately regarded as to Clubb, in light of the obligations of full disclosure between partners regarding partnership affairs, as this transaction clearly was.

Also, in *Glade,* the alleged joint clients were not partners and were not shown to be clients of the attorney as to a mutual transaction affecting both. In fact, the clients, disclosure of whose communications was sought, were not parties to the lawsuit involved, so that the statute (§ 962) was literally inapplicable. (*Glade* v. *Superior Court, supra,* 76 Cal.App.3d at p. 747.)

■ The express words of section 962 are: "Where two or more clients have retained . . . a lawyer upon a matter of common interest, none of them . . . may claim a privilege . . . as to a communication made in the course of that relationship when such communication is offered in a civil proceeding between [them] . . . ." Here, the statute applies to communications between Dougherty and either partnership involving the partnership business of NC I, including, in the concept of the business of that partnership, the circumstances regarding the disposition of its major asset. Dougherty must reveal the pertinent information to Clubb.

Accordingly, the petition for a writ of prohibition is denied, and the temporary stay order issued in this matter is vacated, effective immediately.

Work, Acting P. J., and Butler, J., concurred.

Petitioners' application for review by the Supreme Court was denied April 1, 1987.