### Donald G. RICE and Jacqueline Rice, Appellants–Plaintiffs Below,

### v.

### T. Russell STRUNK, Jr., Thomas M. Gallmeyer, Rothberg, Gallmeyer, Fruechtenicht & Logan, an Indiana Partnership, Appellees–Defendants Below.

#### No. 57A03–9303–CV–81.

Court of Appeals of Indiana,
Third District.

April 18, 1994.

Rehearing Denied July 25, 1994.

John Muller, Timothy J. Kennedy, Miller, Muller, Mendelson & Kennedy, Indianapolis, for appellants.

Leonard E. Eilbacher, Carla J. Baird, Michael D. Harmeyer, Hunt, Suedhoff, Borror & Eilbacher, Fort Wayne, for appellees.

STATON, Judge.

Donald and Jacqueline Rice ("the Rices") appeal the trial court's order granting summary judgment in favor of T. Russell Strunk, Jr., Thomas Gallmeyer, and the law firm of Rothberg, Gallmeyer, Fruechtenicht & Logan ("Rothberg firm"). The Rices raise one issue for our review, which we divide into two and restate as follows:

I. Whether the Rices' claims are barred by the statute of limitations.

II. Whether there is a genuine issue of material fact as to the Rices' claim for legal malpractice.

We affirm.

Donald Rice, Steven Cobin, and Harold Belkin formed a general partnership in 1985 which existed for the purpose of owning and managing the Oaklawn Courts Apartments in Fort Wayne, Indiana ("Oaklawn Courts Partnership"). Cobin and Belkin were also partners in two other apartment complex partnerships, Casselwood Partnership and McMillen Park Partnership. Rice was only a general partner in the Oaklawn Courts apartments. In addition, he and his wife, Jacqueline, were employed to manage all three of the apartment complexes held by the partnerships.

The Rothberg firm provided legal services to the three partnerships at all times pertinent to this case. The Rothberg firm also acted as legal counsel to the Rices for various personal and business matters unrelated to the partnership during 1984 and 1985. In September of 1985, however, Rice wrote to Thomas Gallmeyer ("Gallmeyer"), a partner

at the Rothberg firm, requesting the return of his records and files. Thereafter, Rice hired independent counsel to represent him in his personal affairs.

In late 1986, Rice, Cobin and Belkin decided to refinance the Oaklawn Court Apartment complex. The closing for the refinancing was scheduled for March 24, 1987. Meanwhile, in February of 1987, Cobin and Belkin approached T. Russell Strunk ("Strunk"), an attorney at the Rothberg firm, to determine if Strunk would be interested in replacing Rice as the manager of all three apartment complexes. Strunk accepted the offer and on March 18, 1987, Strunk told the Rothberg firm he was leaving. Cobin and Belkin told Strunk and Gallmeyer not to tell Rice that his management contracts were about to be terminated, and he was going to be replaced with Strunk.

Rice and Strunk were the only representatives of the Oaklawn Court Partnership that were present at the closing on March 24, 1987. Each of the partners, including Rice, were required to personally guarantee the loan. Too, the bank required Rice to subordinate his management contract in consideration for the refinancing. Strunk reviewed each of the closing documents with Rice, including the personal guaranty and subordination agreement, and Strunk signed some documents as "Attorney in Fact" on behalf of all the partners.

On May 21, 1987, Belkin and Cobin advised Rice that they considered his three management contracts to be in breach and they were consequently being terminated. In their amended complaint, the Rices asserted the following claims against Strunk, Gallmeyer, and the Rothberg firm (hereinafter collectively referred to as "the Attorneys"): fraud, breach of fiduciary duty, legal malpractice, and conspiracy to commit actual and constructive fraud. The trial court granted summary judgment in favor of the Attorneys and this appeal ensued.

■ Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C). The burden is on the moving party to prove there are no genuine issues of material

fact and he is entitled to judgment as a matter of law. Once the movant has sustained this burden, the opponent must respond by setting forth specific facts showing a genuine issue for trial; he may not simply rest on the allegations of his pleadings. *Stephenson v. Ledbetter* (1992), Ind., 596 N.E.2d 1369, 1371. At the time of filing the motion or response, a party shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion. T.R. 56(C).

■ When reviewing an entry of summary judgment, we stand in the shoes of the trial court. We do not weigh the evidence but will consider the facts in the light most favorable to the nonmoving party. *Collins v. Covenant Mut. Ins. Co.* (1992), Ind.App., 604 N.E.2d 1190, 1194. We may sustain a summary judgment upon any theory supported by the designated materials. T.R. 56(C).

I.

*Statute of Limitations*

■ The Attorneys contend that all of the Rices' claims are subsumed within their allegation of legal malpractice and are, thus, subject to a two year statute of limitations. *See* IND.CODE 34–1–2–2 (1988); *Shideler v. Dwyer* (1981), 275 Ind. 270, 417 N.E.2d 281. It is well settled that the substance of the cause of action, rather than the form, determines the applicability of the statute of limitations. *Shideler, supra*, at 285.

In *Shideler*, the plaintiff sought damages against an attorney who negligently drafted a will in which the plaintiff was named a beneficiary. When a clause in the will was deemed void, thereby precluding the plaintiff from recovering, an action was brought against the attorney alleging she was liable under the following theories: (1) breach of contract; (2) negligence; (3) fraud; (4) constructive fraud; and (5) breach of fiduciary duty. Our supreme court opined that "[w]ith respect to the Complaint herein, the number and variety of Plaintiff's technical pleading labels and theories of recovery cannot disguise the obvious fact—apparent even to a

**1154**

layman—that this is a malpractice case, and hence is governed by the statute of limitations applicable to such actions." *Id.* at 286.

■■ We find *Shideler* controlling and conclude that the Rices' claims are governed by the two year statute of limitations applicable to legal malpractice claims.[1] Nevertheless, we conclude the Rices' claims are not barred by the statute of limitations.

Although the alleged misconduct occurred at the closing on March 24, 1987, the Rices did not learn of their alleged injury until May 21, 1987, when they discovered that the management contracts had been terminated. As noted in this court's recent opinion in *Habig v. Bruning* (1993), Ind.App., 613 N.E.2d 61, *trans. denied,* a cause of action under IC 34–1–2–2 accrues when the resultant damage is ascertainable, or through the exercise of due diligence, could be ascertained. *Id.* at 64; *see also Groen v. Elkins* (1990), Ind.App., 551 N.E.2d 876, 880, *trans. denied.* Because their cause of action accrued on May 21, 1987 and the Rices filed their complaint on May 18, 1989, the two year statute of limitations does not preclude their claim.

## II.

### *Legal Malpractice*

Notwithstanding our conclusion that the Rices' cause of action is not barred by the statute of limitations, the Rices cannot prevail on the gravamen of their claim.

■■ The essential elements of a cause of action for legal malpractice are as follows: (1) the employment of the attorney (the duty); (2) the failure of the attorney to exercise ordinary skill and knowledge (the breach); (3) negligence which was the proximate cause (causation); and (4) damage to the plaintiff (damages). *Fiddler v. Hobbs* (1985), Ind.App., 475 N.E.2d 1172, 1173, *trans. denied.* The Attorneys contend they are not liable to the Rices because they owed no duty to Rice as an individual; rather, they were employed by the partnership and, thus, owed a fiduciary duty to the partnership only. The Rices respond that the firm's fiduciary obligation to the partnership extends to each of the general partners therein. We are, therefore, confronted with the following issue of first impression in Indiana: whether an attorney representing a general partnership has an attorney-client relationship with each of the general partners.

Though our Rules of Professional Conduct do not specifically address the obligation owed by an attorney in the context of a partnership, Prof.Cond.R. 1.13 provides in pertinent part: "(a) A lawyer employed or

1. The Rices urge us to follow *Seevers v. Arkenberg* (S.D.Ind.1989), 726 F.Supp. 1159, wherein the court held the client's action against her attorney was governed by the six year statute of limitations applicable to actions for fraud. However, *Seevers* is distinguishable from the instant case because the evidence therein revealed that the attorney misrepresented to the plaintiff that he was representing her interests, as well as her husband's, in the divorce proceeding. In fact, the attorney only represented the husband's interest in the divorce. Because the gravamen of plaintiff's case most closely resembled an action for fraud, the court applied the six year limitation period. *Id.* at 1170.

We reject the Rices' contention that the gravamen of the case at bar is similarly an action for fraud. The elements of actual fraud are as follows:
(1) a material misrepresentation of a past or existing fact by the party to be charged which
(2) was false,
(3) was made with knowledge or in reckless ignorance of the falsity,
(4) was relied upon by the complaining party, and

(5) proximately caused the complaining party injury.
*Pugh's IGA v. Super Food Services, Inc.* (1988), Ind.App., 531 N.E.2d 1194, 1197, *trans. denied.* Here, there is no evidence that Strunk, or any of the Attorneys, made a material misrepresentation to the Rices before, during or after the March 24 closing.

The Rices contend that Strunk's approval for signature by the partners of a closing document that stated there were no material changes in the business, provided the basis for a claim of fraud. We do not agree. First, the statement could not have been a misrepresentation of a *past or existing fact* because at the time of the closing, the Rices' management contracts had not been terminated. Too, the document at issue was a closing certificate wherein Cobin, Rice, Belkin and Belkin's wife made certain representations to the mortgage corporation; it cannot be construed as containing representations by the Attorneys to Rice personally. The Rices' action for fraud has no merit.

retained by an organization represents the organization acting through its duly authorized constituents."

We conclude that representing a partnership and a corporation presents analogous potentials for conflict and, thus, justifies applying similar parameters to the attorney-client relationship.[2] We recognize that in doing so we are declining to follow decisions from other jurisdictions which hold that counsel for a partnership is engaged in an attorney-client relationship with each and every partner therein.[3] However, we believe this imposes unrealistic obligations on attorneys that endeavor to represent partnerships.

The implications are illustrated by the case at bar. If the Attorneys in the present cause had acted in contravention of Cobin and Belkin's instructions by revealing to Rice the plan to terminate his management contracts, Cobin and Rice undoubtedly would have pursued a malpractice action of their own. Inasmuch as the independent interests of individual partners are often incongruent, we conclude that counsel for a partnership has only that entity for a client.

While we believe the wisest course of action would have been for Strunk to advise Rice to seek independent counsel for the closing, we decline to impose civil liability upon Strunk for his failure to do so. The trial court correctly entered summary judgment in favor of the Attorneys.

Affirmed.

GARRARD, J., concurs.

SULLIVAN, J., concurs and files separate opinion.

SULLIVAN, Judge, concurring.

I agree that the claims are not barred by the statute of limitations. I further agree that the grant of summary judgment in favor of the defendants was not erroneous. I do so, however, with some degree of misgiving.

It may be true that an attorney employed to represent a partnership is not counsel for the individual partners. As suggested by the majority opinion, imposition of a general fiduciary duty to all partners, no matter how numerous those partners may be and regardless whether individual partners have conflicting interests among themselves or with the partnership, would be extremely unwieldy and virtually impossible to effectuate.

Nevertheless, I am unable to agree that such attorney has no duty whatever to the individual partners. Implicit in the Rules of Professional Conduct is a duty to refrain from willfully misleading individual partners with respect to the affairs of the partnership. The concept of good faith and fair dealing runs throughout the Rules.

If an attorney participates in a fraudulent conspiracy which is certain to injure known third persons, the attorney should not find refuge in an attorney-client relationship with the partnership. See *Scholes v. Stone, McGuire and Benjamin* (1992) N.D.Ill., 786 F.Supp. 1385, 1395.

If the alleged malpractice constitutes fraud, collusion, or results from a malicious or tortious act, a defendant should not be permitted to shield himself with the legal principle that such claims fall into the category of all other legal malpractice claims, e.g., simple negligence. See *Shideler v. Dwyer* (1981) Ind., 275 Ind. 270, 417 N.E.2d 281.

With reference to the allegations of fraud here, it is quite probable that plaintiffs would be unable to establish at trial that Strunk

---

**2.** *See Quintel Corp., N.V. v. Citibank, N.A.* (S.D.N.Y.1984), 589 F.Supp. 1235 (Analogized with rule regarding representation of a corporation and held that the partnership's attorney had no attorney-client relationship with the partner); Ronald E. Mallen & Jeffrey M. Smith, 2 *Legal Malpractice,* 3d Ed. (1989), section 20.7, p. 260 ("A partnership is usually a singular legal entity and is the client. A lawyer who represents the partnership does not thereby become counsel for the partners. The principal accords with codified ethical rules which require that an attorney for an entity owes a loyalty only to that client and not to its owners or investors.")

**3.** *See e.g., Pucci v. Santi* (N.D.Ill.1989), 711 F.Supp. 916; *Wortham & Van Liew v. Superior Court* (1987), 188 Cal.App.3d 927, 233 Cal.Rptr. 725, *review denied; Roberts v. Heim* (N.D.Cal. 1988), 123 F.R.D. 614.

had defrauded them. That fact, however, does not justify summary judgment. *Yang v. Stafford* (1987) 4th Dist. Ind.App., 515 N.E.2d 1157. Rather, summary judgment was warranted because until the other partners had actually terminated Rice's employment, Strunk did not have knowledge of an existing or past fact. He merely had knowledge that the other partners intended to engage in an act in the future. In this sense, the failure of Strunk to make full disclosure of that intention was perhaps, as a matter of law, not the stuff of which a fraud recovery is made. *Wisconics Engineering, Inc. v. Fisher* (1984) 2d Dist. Ind.App., 466 N.E.2d 745. *Cf. Cap Gemini America, Inc. v. Judd* (1992) 1st Dist. Ind.App., 597 N.E.2d 1272 (applying California law); *First National Bank of New Castle v. Acra* (1984) 1st Dist. Ind.App., 462 N.E.2d 1345 (promise of future conduct coupled with past conduct justified reliance and supported fraud claim).

Even if Strunk's knowledge of the others' future intentions could be considered a present fact, the summary judgment was not erroneous. The matters before the trial court with reference to summary judgment, in my view, disclose the absence of a genuine issue as to whether any compensable injury was occasioned by the acts or nonfeasance of the attorneys. This is clearly true with regard to any claimed damages resulting from the termination of Rice's management contracts by the other partners. The attorneys clearly had no control or input with respect to that decision.

I also perceive no compensable injury to Rice regarding his assertion that, had he known of his prospective termination, he would not have agreed to the refinancing arrangement. Clearly, the refinancing was absolutely essential to the best interests of the partnership, including the partnership interest of Rice. Thus Rice, as a partner, has no viable claim for damages as a result of the refinancing. Additionally, his capacity as a management employee was unaffected by the refinancing.

A somewhat parenthetical thought is prompted by the fact that Strunk stood to benefit and, by accepting the offer to succeed Rice, did in fact benefit from the termination.

Such circumstance is susceptible to an inference that a claim may have been asserted upon a theory of tortious interference with Rice's management contract. *See* 1 Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice*, § 6.23, p. 348 (3d Ed.1989). However, the claims asserted are clearly focused upon theories of fraud, breach of a fiduciary duty, conspiracy, and breach of a duty to advise of the need to obtain independent counsel.

Even if the allegations be construed to embrace the concept of tortious interference, recovery in Indiana requires proof that the defendant induced a breach of contract. *Furno v. Citizens Insurance Co. of America* (1992) 1st Dist. Ind.App., 590 N.E.2d 1137. Malice is also a required element. *Mallen, supra* at § 6.23. Here, there is no evidence or reasonable inference that Strunk maliciously induced or advised the termination. The decision to terminate Rice's management contracts had already been made by the other partners. That Strunk benefitted from the termination may present ethical and moral questions, but it does not, of itself, provide the seeds for recovery under the complaint filed or the facts alleged. Not every breach of ethical conduct gives rise to a private cause of action.

Subject to the caveats expressed herein, I concur.