**Richard BELL, Appellant–Defendant,**

v.

**Gordon CLARK, Appellee–Claimant.**

No. 49A02–9311–CV–609.

Court of Appeals of Indiana.

July 11, 1995.

Rehearing Denied Sept. 21, 1995.

James K. Wheeler, James D. Crum, Coots, Henke & Wheeler, Carmel, for appellant.

Jon R. Pactor, Indianapolis, for appellee.

## OPINION

ROBERTSON, Judge.

Attorney Richard N. Bell appeals the judgment entered after a trial before the bench in favor of Gordon Clark in the amount of $32,-500.00 in compensatory damages and $50,-000.00 in punitive damages on Clark's counterclaims against Bell for legal malpractice, breach of fiduciary duties, and libel. Bell raises six issues, which we restate and consolidate into five, none of which constitute reversible error.

### FACTS

The facts in the light most favorable to the trial court's judgment reveal that, in 1982, Clark, an architect, bought the Riley School in Greenfield, Indiana, in order to rehabilitate and develop the property into condominiums. Clark obtained bank financing and began construction. One unit was completed, furnished, and used as a very attractive model. However, the project did not take off and eventually stalled.

In late 1983, Clark hired Bell, an attorney and certified public accountant, to form a real estate limited partnership to finance the further development of the property. This time the property was to be developed into an apartment project known as the Riley School Apartments.

Clark was the general partner of the Riley School Apartments Partnership. Bell served as the attorney of the general partner, and as the attorney of the limited partnership. Bell's former accounting firm served as the partnership's accountants. Bell was contractually bound to preserve the goodwill of his former accounting firm.

Bell prepared the partnership agreement and other partnership documents including a prospectus to be used in selling the limited partnership units. The prospectus contained the following provision regarding Bell's legal representation:

> *Representation By Attorneys and Accountants.* The Partnership and the General Partner are not represented by separate counsel. ... Therefore, investors should retain their own legal and tax advisers, since the legal counsel and accountants for the Partnership have not been retained and will not be available to provide personal legal counsel or personal tax advice to investors.

Bell was paid a flat fee of $21,000.00 from the partnership for his services in preparing the partnership documents.

The real estate was transferred from Clark to the limited partnership in May of 1984. Bell handled the transaction but prepared no closing statement. Nor did the accounting firm provide an audit for 1984. Thus, it was not clear whether the partnership had assumed the $32,500.00 Clark had invested in the project before the formation of the limited partnership or whether Clark would be required to absorb these expenses himself.

Under the partnership agreement, Clark was to receive various fees as compensation, including an architect fee and a fee for the operating guarantee. Also, and central to this dispute, Clark was to be compensated under the agreement as follows:

> The Partnership shall pay Mr. Clark a development fee of $50,000 and a rehabilitation fee of $51,000 payable after the completion of the rehabilitation of the Project and at the closing of the permanent financing.

The limited partnership units began to sell. Many of the limited partners were Bell's clients or clients of Bell's former accounting firm. Bell himself bought a limited partnership unit creating an obvious conflict of interest with his representation of Clark as the general partner. Ultimately, enough limited partnership units were sold to finance the project. In fact, too many units were sold and some of the sales had to be canceled. In

addition, Clark obtained a $100,000.00 personal loan and invested it in the project.

The project took off and the apartments were 60% completed by December 31, 1984. Under the accrual method of accounting, which had been adopted for the partnership upon Bell's advice, accounting records showed that Clark had earned 60% of the development and rehabilitation fees at year end ($101,000.00 × 60% = $60,600.00).

Development of the project continued until April 30, 1985, when the Riley School Apartments burned down and were a total loss. At the time of the fire, the apartments were 77% completed.

At that point, it became obvious that the limited partners, including Bell, would be unlikely to recover their investments in the project. Also, the limited partners could no longer receive the tax advantages, which at that time had made the investment in real estate limited partnerships very attractive, because the project was a total loss and would not be completed. The amount of money available for distribution to the limited partners, including Bell, depended upon how much money could be collected from the insurance company for the loss due to the fire *and* the amount of money that could be denied (or recovered from) the general partner, Clark. The less money that Clark would receive, the more money that would be available for distribution to Bell and the other limited partners (many of whom were Bell's or his former accounting firm's clients). Although Bell was aware of these circumstances, he continued to serve as attorney for Clark and the partnership. Bell never made any communications to Clark regarding any actual or potential conflicts of interest Bell might have had as a limited partner and the attorney for the partnership and for Clark.

Unfortunately, Bell had not provided in the partnership agreement for the event of fire or other catastrophe. Thus, the agreement did not provide whether Clark would be entitled to, or required to forfeit, the development and rehabilitation fees that had accrued before the fire. The accountants asked Bell for a legal opinion on this matter (demonstrating that the agreement was ambiguous on this matter). Bell insisted that, under the terms of the agreement as set out above, Clark was required to forfeit all fees which had accrued before the fire because there had been no closing of permanent financing.

The accounting demonstrated that 1) if Clark were required to forfeit all the accrued fees, he would be in debt to the partnership; but that, 2) if Clark were entitled to receive these fees, the partnership would owe him money. Based upon Bell's legal advice to the accountants (obviously against Clark's interests), the accountants took the accrued fees out of consideration showing that Clark owed the partnership money.

Bell also instructed the accountants that Clark was required to absorb the $32,500.00 which had been invested in the project's development before the formation of the limited partnership. The investment had benefitted the partnership having contributed to the development of the property. Clark had not expected that he would be required to absorb these costs of development and, had he known, would have taken action to rectify the situation. For example, he would have sold an additional limited partnership unit (or not cancelled one of the oversold units).

After having received the $21,000.00 from the partnership for legal services, Bell billed Clark and the partnership for an additional sum of approximately $14,000.00. Clark disputed this bill. Bell eventually sued and obtained a default judgment against Clark and the partnership for these fees. He did not notify Clark or any of the limited partners that he had intended to take, or had taken, the default judgment.

Then, on July 3, 1985, Bell sent the following libelous letter to Clark and the limited partners which set off a domino effect against Clark and constitutes the gravamen of Clark's counterclaims against Bell:

Dear Mr. Clark:

For the following reasons I hereby resign as the attorney for Riley School Apartments:

(1) For your failure to pay legal fees which are due and owing our firm for services rendered in the amount of $14,675.43 plus interest.

(2) For your failure to keep accurate accounting records such that Riley School Apartments either loaned to Gordon Clark or its affiliates an amount to be at least $47,800.00 in excess of amounts due and owing Gordon Clark or any of its affiliates. Specifically, the Development and Rehabilitation Agreement provides that the general partner shall be paid for his services in the development of the Partnership property [sic] rehabilitation of the Partnership property *upon the closing of the permanent loan financing.* Since the permanent mortgage loan financing was not completed prior to your advancement of these funds, you are in violation of the partnership agreement and should be held accountable for such.

For these reasons I hereby resign as attorney for the partnership and by this letter hereby notify all the limited partners of such.

(Emphasis in original). The defamatory matters in the letter were repeated in discussions and meetings with the partners.

The accountant testified that the $47,800.00 figure consisted primarily of the $32,500.00 representing the costs of the development before the formation of the partnership (which, as discussed above, Clark reasonably believed had been assumed by the partnership because the investment had benefitted the project). Approximately $18,000.00 of the $32,500.00 figure included discounts and commissions which were not monies that went to Clark. The $47,800.00 figure did not take into consideration any amount that Clark was entitled to in architect's fees or operating deficit fees under the partnership agreement. Obviously, the figure represented Bell's position that Clark was required to forfeit all accrued development and rehabilitation fees under the partnership—a position quite adverse to Clark which was reasonably disputable due to the failure of the agreement to provide for the event of a total loss by fire.

Bell, with proxies from most of the other limited partners, voted to oust Clark as the general partner of the partnership. In the face of such opposition, Clark resigned as the general partner.

One of the limited partners, an attorney named Joe Thomas, brought an action for the dissolution of the partnership, the appointment of a receivership, and for an award of punitive damages against Clark. The allegations in Thomas' complaint were based upon the representations that Bell had made in the July 3, 1985, letter set out above. For example, the complaint alleged that Clark had illegally drawn $47,800.00 from the partnership and that:

the misappropriation of funds by the general partner has been pointed out by the previous attorney for the partnership, Richard Bell, and the general partner has failed and refused to repay the money to the partnership.

The court granted Thomas' petition and appointed Thomas as the receiver of the partnership.

The receivership/partnership paid the default judgment for legal services that Bell had taken against Clark and the partnership. In May of 1986, the receivership settled with the insurance company for $850,000.00, an amount commensurate with how close the project had come to being completed before the fire. As discussed above, the project had been approximately 77% completed before the fire.

The trial court presiding over the receivership ultimately ordered arbitration pursuant to the terms of the partnership agreement. Accounting records were not made available to Clark as the receiver had instructed the accountants not to provide them to Clark. Eventually, Clark obtained the records pursuant to a subpoena and then, only upon payment of $358.50.

The arbitration took place over two days in January 1988, more than two years after Clark's initial request for arbitration. The arbitrators rejected Bell's argument that Clark was not entitled to any portion of the development and rehabilitation fees merely because permanent financing had never closed. In April of 1988, the arbitrators awarded Clark nearly $105,000.00 representing the sums due him under the partnership agreement. The arbitrators did not require Clark to pay anything to the partnership.

The trial court authorized the award and the receiver paid the money to Clark.

Clark hired new legal counsel and obtained relief from the default judgment for Bell's attorney fees based upon the trial court's finding that Bell had committed misconduct in his "failure to advise [Clark and the partnership] of his intent to proceed with the default judgment on the Complaint, which [Bell] had a duty to do in light of his previous and existing fiduciary relationship with [Clark and the partnership]." Bell did not appeal.

Instead, Bell filed an amended complaint to recover the attorney fees he had billed. Clark denied liability and counterclaimed against Bell for negligence (legal malpractice) and libel. Bell ultimately admitted that the $21,000.00 the partnership had already paid him covered a substantial amount of the services which were the subject of his lawsuit and withdrew his claim for attorney fees.

Trial before the bench was held over five days in March of 1993. The trial court found Bell liable to Clark for libel, negligence, and breach of fiduciary duties in the amount of $32,500.00 in compensatory damages and $50,000.00 in punitive damages. This appeal ensued.

Additional facts are supplied as necessary.

## DECISION

A motion for specific findings pursuant to Ind.Trial Rule 52 was filed. The purpose of making special findings is to provide the parties and reviewing courts with the theory upon which the judge decided the case so that the right of review might be preserved effectively. *Willett v. Clark* (1989), Ind.App., 542 N.E.2d 1354, 1357. Special findings, and the judgment which rests upon those findings, will be set aside only if they are clearly erroneous in that the record is devoid of facts or inferences to support the findings or that the judgment is unsupported by the findings. *Matter of C.D.* (1993), Ind.App., 614 N.E.2d 591, 593, *trans. denied.* In reviewing the trial court's entry of special findings, we neither reweigh the evidence nor reassess the credibility of witnesses. *Flansburg v. Flansburg* (1991), Ind.

App., 581 N.E.2d 430, 435, *trans. denied.* Special findings, even if erroneous, do not warrant reversal if they amount to mere surplusage and add nothing to the trial court's decision. *Donavan v. Ivy Knoll Apartments Partnership* (1989), Ind.App., 537 N.E.2d 47, 52.

## I.

In the interest of simplicity, under Issue I, we will demonstrate that the trial court's judgment, and its award of both actual and punitive damages, may be sustained upon the theories of legal malpractice, breach of fiduciary duties, and libel. Under the subsequent issue headings, we will address the specific concerns raised by Bell which are not disposed of by the initial sufficiency analysis.

## A.

### *Malpractice/Breach of Fiduciary Duties*

A lawyer's representation of an interest adverse to his client can constitute malpractice because such action taken against the client's interests constitutes the failure to exercise the knowledge, skill, and ability ordinarily possessed and exercised by lawyers. *Apple v. Hall* (1980), Ind.App., 412 N.E.2d 114, 116. In *Blasche v. Himelick* (1965), 140 Ind.App. 255, 210 N.E.2d 378, *trans. denied,* we stated:

There are few of the business relations of life involving a higher trust and confidence than that of attorney and client, or, generally speaking, one more honorably and faithfully discharged; few more anxiously guarded by the law, or governed by sterner principles of morality and justice; and it is the duty of the court to administer them in a corresponding spirit, and to be watchful and industrious, to see that confidence thus reposed shall not be used to the detriment or prejudice of the rights of the party best owing it.

\* \* \* \* \* \*

It is a basic principle of professional conduct that an attorney must faithfully, honestly, and consistently represent the interest and protect the rights of his client, and that he is bound to discharge his duties to his client with the strictest fidelity, to observe the highest and utmost good faith,

and to inform his client promptly of any known information important to him. 210 N.E.2d at 381 (Citations omitted). A lawyer commits a breach of trust going to the very essence of the attorney-client relationship when he takes a position adverse to that of his client, or former client, in a business transaction. *Matter of Roache* (1983), Ind., 446 N.E.2d 1302, 1303–1304. Attorneys must not allow their private interests to conflict with those of their client. *Bailey v. Martz* (1986), Ind.App., 488 N.E.2d 716, 724, *trans. denied.* A lawyer owes his client a duty, when withdrawing from representation, to withdraw in the manner least harmful to the client in order to protect the client's interests. *Id.*

■ In the present case, the trial court concluded, based upon evidence of record as set out in the FACTS section, that Bell had involved himself in numerous conflicts of interest by his representing Clark and the partnership and by becoming a limited partner himself. Also, the trial court found that Bell placed his financial interests ahead of Clark's by giving a legal opinion to the accountants that Clark was not entitled to any portion of the rehabilitation and development fees which had accrued. Further, Bell had withdrawn from representation in a manner quite prejudicial to Clark—by way of a letter distributed to the limited partners accusing Clark of misappropriating partnership funds. Moreover, the trial court found that Bell was motivated to take a position adverse to Clark in the winding up of the partnership after the fire by Bell's desire to obtain maximum compensation for his limited partnership interest. Also, the trial court found that Bell had been motivated to shift responsibility for the poor state of the partnership accounting records and the failure of the project to Clark because Bell was contractually bound to preserve the goodwill of his former accounting firm which had many of the limited partners as clients. Finally, the trial court noted Bell's dishonesty in double billing Clark and the partnership for legal fees.

### B.

### *Libel*

■ Bell's July 3, 1985, letter distributed to the limited partners (set out in the FACTS section) stated that Bell had violated the partnership agreement by taking inappropriate "loans" from the partnership in the amount of $47,800.00. This letter constituted libel per se because it attacked Clark's honesty and integrity in his trade and business. *See Weenig v. Wood* (1976), 169 Ind.App. 413, 349 N.E.2d 235, 246.

### C.

### *Actual and Punitive Damages*

Bell's letter impugned Clark's reputation for honesty in his business dealings. Bell's torts led to Clark's ouster as the general partner, the imposition of a receivership, and years of arbitration and litigation, all of which caused Clark to incur substantial expense and suffer emotional distress.

■ The standard of appellate review for sufficiency of the evidence with respect to an award of punitive damages imposes neither greater nor lesser judicial scrutiny than other sufficiency questions. *Bud Wolf Chevrolet, Inc. v. Robertson* (1988), Ind., 519 N.E.2d 135, 137. The court on review of the sufficiency of evidence supporting an award of punitive damages will affirm if, considering only the probative evidence and the reasonable inferences supporting it and without reweighing evidence or assessing witness credibility, a reasonable trier of fact could find such damages proven by clear and convincing evidence. *Id.* An award of punitive damages may be awarded upon clear and convincing evidence that the defendant acted with malice, fraud, gross negligence or oppressiveness which was not the result of a mistake of fact or law, honest error of judgment, overzealousness, mere negligence, or other human failing. *Id.* at 137–138. An award of punitive damages is designed to punish the defendant and to deter him and others from like conduct in the future. *Id.* All awards of punitive damages must be supported by a finding that the public interest will be served by punishing the wrongdoer. *A.B.C. Home & Real Estate Inspection, Inc. v. Plummer* (1986), Ind.App., 500 N.E.2d

1257, 1263. Punitive damages are especially appropriate if the wrongdoer occupies a position of trust with members of the general public as well as with the victim. *F.D. Borkholder v. Sandock* (1980), 274 Ind. 612, 413 N.E.2d 567, 571.

The trial court found that Clark had carried his burden of proving, by clear and convincing evidence, that Bell had acted with malice, oppression, bad faith, fraud, and a heedless disregard of the consequences. The trial court further found that an award of punitive damages was appropriate in the case at bar to punish Bell and to deter all other attorneys from libeling their clients and from breaching fiduciary duties.

### D.

### Conclusion

The trial court's judgment, awarding actual and punitive damages to Clark based upon Bell's legal malpractice, breach of fiduciary duties, and libel, is supported by the findings which are supported by the evidence as set out in the FACTS section. Therefore, the trial court's judgment is not clearly erroneous and we find no error.

### II.

Whether certain findings (or conclusions) entered by the trial court are clearly erroneous and warrant reversal.

The trial court issued 193 special findings of fact spanning 28 pages. In addition, the trial court entered 17 more pages of analysis and legal conclusions. Bell challenges a few of these findings of fact and conclusions of law as clearly erroneous.

First, Bell attacks the trial court's finding that Clark was able to sell the required number of limited partnership units by December of 1984. Bell points out that certain limited partners had not fully paid for their units before the fire. That certain limited partners owed the limited partnerships money for the units they had purchased does not mean the units had not been sold. These limited partners either owed money to the partnership or were ultimately entitled to a smaller distribution of the insurance pro-

ceeds. The trial court's finding is not clearly erroneous and we find no error.

Next, Bell argues that no evidence supported the trial court's finding that the arbitrators disagreed with Bell's argument that Clark was entitled to no development or rehabilitation fee. Bell points out that the transcript of the arbitration proceedings was not entered into evidence. Considering that the arbitrators awarded Clark approximately $105,000.00 from the receivership/partnership, the trial court could have reasonably inferred from the application of simple mathematics that the arbitrators had awarded Clark an amount including accrued development or rehabilitation fees. Therefore, we find no error.

Bell next attacks the trial court's finding that the receiver relied upon Bell's July 3, 1985, letter in filing the complaint for the imposition of the receivership. Bell asserts the receiver performed an independent investigation of the circumstances and in no way relied upon Bell's representations in filing the complaint. As noted above, the complaint for the imposition of the receivership contained information found in the July 3 letter. The petition also referenced Bell as providing the information upon which the complaint was based. Therefore, the trial court's finding that Bell's letter caused the limited partner/receiver to seek the imposition of the receivership is supported by evidence and we find no error.

Bell argues the trial court erred in concluding that the following conduct constituted legal malpractice:

1) Bell's failure to provide in the partnership agreement for the event of fire;

2) Bell's failure to provide a closing statement for the sale of the real estate to the partnership;

3) Bell's failure to advise Clark to obtain independent counsel and/or independent accountants;

4) Bell's failure to assure that the accounting records were maintained in good order.

As discussed above, the prejudice/damages suffered by Clark due to the adverse positions taken by Bell in furtherance of his own

personal interests amply supports the trial court's judgment that Bell was liable to Clark for legal malpractice. Therefore, the trial court's conclusions that Bell had committed other acts or omissions constituting legal malpractice are mere surplusage and cannot serve as the basis for reversal. *Donavan,* 537 N.E.2d at 52.

## III.

Whether Bell's conduct was justified because of duties he owed to the other limited partners.

Bell cites authority from other jurisdictions for the proposition that the attorney for a partnership owes a fiduciary duty to all partners, including limited partners, to inform them of fraudulent or self-dealing partnership transactions. *See Wortham and Van Liew v. Superior Court (Clubb)* (1987), 188 Cal.App.3d 927, 233 Cal.Rptr. 725; *Pucci v. Santi* (N.D.Ill.1989), 711 F.Supp. 916. These cases are inapposite to the case at bar because they do not stand for the proposition that a lawyer may justify the libelling of a client and engaging in multiple conflicts of interest adverse to that client because of responsibilities the lawyer may owe to persons other than his client. *See id.* Moreover, in *Rice v. Strunk* (1994), Ind.App., 632 N.E.2d 1151, we held:

> We conclude that representing a partnership and a corporation presents analogous potentials for conflict and, thus, justifies applying similar parameters to the attorney-client relationship. We recognize that in doing so we are declining to follow decisions from other jurisdictions which hold that counsel for a partnership is engaged in an attorney-client relationship with each and every partner therein. However, we believe this imposes unrealistic obligations on attorneys that endeavor to represent partnerships.
>
> ... Inasmuch as the independent interests of individual partners are often incongruent, we conclude that counsel for a partnership has only that entity for a client.

*Id.* at 1155. Also, as set out in the FACTS section, the limited partnership's prospectus (drafted by Bell), identified Bell as the law-yer for Clark and the partnership and warned prospective limited partners that they would be required to obtain independent legal counsel. Bell's argument that he was justified in betraying Clark's trust in favor of duties he owed to the other limited partners is not persuasive and was properly rejected by the trial court.

Bell also asserts that his actions were justified because Clark had violated federal securities laws. Bell suggests that the Security and Exchange Commission could have levied sanctions against him and the other limited partners had he not withdrawn from representation of Clark and the partnership as he did. Bell's July 3, 1985, letter did not mention any violation of securities regulations. Moreover, Bell has never presented a cogent argument purporting to demonstrate that Clark had violated securities regulations. In fact, Bell admitted at trial that the partnership had never experienced any security regulation problems. Again, we cannot conclude the trial court erred in rejecting Bell's claim that his malpractice and libel of Clark was somehow justified. Therefore, we find no error.

## IV.

Whether Bell established the defenses of qualified privilege or truth to Clark's counterclaim of libel.

Bell argues that his communications to the other limited partners were protected by a qualified privilege. Clark argues persuasively that Bell failed to establish and has waived this defense. However, we need not discuss Bell's entitlement to the protection of a qualified privilege because the trial court found that Clark had met his burden of proof in rebutting the defense by demonstrating that Bell had acted without regard for the truth, with malice, for a dishonest purpose, and out of greed to obtain excessive fees and a greater return for his investment in the limited partnership. *See Elliott v. Roach* (1980), Ind.App., 409 N.E.2d 661, 673 (One is not entitled to the protection of a qualified privilege where the defamation was motivated by ill will or for an improper purpose).

Bell's asserted defense of truth also lacks merit. As discussed above, Bell stated in the July 3, 1985, letter that Clark had taken $47,800.00 out of the partnership in the form of inappropriate "loans" in violation of the partnership agreement. Bell concedes that his allegation that Clark had taken "loans" from the partnership was untruthful. (Appellant's brief p. 32). Also, ample evidence demonstrated that Clark had not violated the partnership agreement by misappropriating partnership funds. Therefore, the trial court properly rejected Bell's claimed defenses to his defamation of Clark.

### V.

Whether the trial court erred in ruling that the arbitration proceedings had barred Bell from litigating the issue of whether Clark had misappropriated partnership funds.

■ As discussed throughout this opinion, the trial court's findings and the evidence of record affirmatively demonstrate, independent of any inferences to be drawn from the results of the arbitration proceedings, that Clark had not misappropriated partnership funds as alleged by Bell in the July 3, 1985, letter. Moreover, Bell's liability to Clark in the instant case is independent of the partnership dissolution matters resolved in the arbitration. Therefore, we hold that the trial court's finding regarding the collateral estoppel effect of the arbitration proceedings is mere surplusage and, even if erroneous, cannot constitute the basis for reversal. *Donavan*, 537 N.E.2d at 52.

Judgment affirmed.

NAJAM and CHEZEM, JJ., concur.