Richard BELL, Appellant (Counter-defendant below),

v.

Gordon CLARK, Appellee (Counter-claimant below).

No. 49S02–9608–CV–530.

Supreme Court of Indiana.

Aug. 6, 1996.

Jon D. Krahulik, Yosha Ladendorf Krahulik & Weddle, Indianapolis, for Appellant (Counter–defendant below).

Jon R. Pactor, Indianapolis, for Appellee (Counter–claimant below).

## ON PETITION TO TRANSFER

SULLIVAN, Justice.

This case requires us to rule upon the duty of a lawyer for a limited partnership to the limited partners thereof in certain circumstances.

### Background

In late 1983, Gordon Clark hired attorney Richard Bell to form a limited partnership to finance the development of the Riley School Apartments. Clark was the sole general partner of the partnership. In addition to serving as the partnership's lawyer, Bell was a limited partner, as were a number of his clients and former clients.

In April of 1985, when the Riley School Apartments were approximately 77% complete, the project was completely destroyed in a fire. Disputes between Clark and Bell regarding various fees ensued. Eventually Bell sent a letter to Clark and the limited partners, claiming Clark failed to pay certain fees and that Clark had acted in violation of the partnership agreement. At some time later, Bell filed a lawsuit against Clark to recover fees that Bell claimed Clark owed him. Clark counterclaimed against Bell for libel and legal malpractice. Eventually, Bell withdrew his claim for attorney fees but the case went to trial on Clark's counter-claims. The trial court found Bell liable for libel, legal malpractice, and breach of fiduciary duties and awarded Clark $32,500 in compensatory damages and $50,000 in punitive damages. The Court of Appeals affirmed the trial court. *Bell v. Clark,* 653 N.E.2d 483, 493 (Ind.Ct.App.1995).

Bell presents two issues for review: (i) whether a lawyer employed to represent a limited partnership owes a duty to inform the limited partners of his opinion that the general partner has engaged in unacceptable conduct; and (ii) whether the trial court erred in setting aside Bell's qualified privilege defense when Bell claims that the Court did not find that he was primarily motivated by ill will.

### Discussion

I

Bell argues that he was obligated to inform the limited partners of the Riley School Apartments partnership of misconduct by Clark because he had an attorney-client relationship and, therefore, a fiduciary duty to all of the partners of the partnership. To support his position, Bell cites cases from other jurisdictions holding that an attorney for a partnership owes a fiduciary duty to all partners. *See Pucci v. Santi,* 711 F.Supp. 916 (N.D.Ill.1989); *Arpadi v. First MSP Corporation,* 69 Ohio St.3d 1474, 634 N.E.2d 629 (1994); and *Wortham and Van Liew v. Superior Court,* 188 Cal.App.3d 927, 233 Cal.Rptr. 725 (1987). In addition, Bell argues that the Court of Appeals erroneously relied on its opinion in *Rice v. Strunk,* 632 N.E.2d 1151 (Ind.Ct.App.1994) (attorney for a partnership has only an attorney-client relationship with the partnership) because that opinion had been previously vacated as a result of our court granting transfer. Ind.Appellate Rule 11(B)(3) ("If transfer shall be granted, the judgment and opinion or memorandum decision of the Court of Appeals shall thereupon be vacated and held for naught ...."); *see Chandler v. Board of Zoning Appeals of Evansville & Vanderburgh County,* 658 N.E.2d 80 n. 1 (Ind.1995). At the time the Court of Appeals rendered its decision in this case, we had granted transfer but not yet issued our ruling in *Rice v. Strunk.*

In *Rice v. Strunk,* also decided today, we analyze the duty of a lawyer for a general partnership to its general partners. *Rice v. Strunk,* 670 N.E.2d 1280 (Ind.1996). We hold that while attorneys for a general partnership formed under the Uniform Partner-

ship Act[1] have a separate attorney-client relationship with each of the partnership and each general partner, that relationship may be modified by the way in which the partnership agreement allocates partnership management responsibilities. *Rice*, 670 N.E.2d at 1287. In so holding, we say:

> To the extent that a partnership agreement places responsibility for the management of the partnership in the hands of less than all the partners, those partners to whom management responsibilities have been given become the "duly authorized constituents" for purposes of Prof.Con.R. 1.13(a). Such circumstances create an attorney-client relationship only between the attorneys and the partnership and not between the attorneys and any individual partner.

*Id.* After reviewing the specific partnership agreement at issue in *Rice*, we conclude that the attorneys for the partnership did not have an attorney-client relationship with the individual partners because the partnership agreement clearly provided that the partnership would be operated by the general partner. *Id.*

■ Unlike *Rice v. Strunk*, the partnership at issue in this case is a limited partnership, not a general partnership. As a matter of limited partnership law, Clark, as the sole general partner, was responsible for the management of the partnership. *See* Ind. Code § 23-16-5-3 (general powers and liabilities of general partner of limited partnership same as general partner of general partnership); Ind.Code § 23-16-4-3(a) (limited partner not liable for obligations of limited partnership unless the limited partner is also a general partner or participates in the control of the business.) The partnership agreement here makes unmistakably clear that Clark, as the general partner, is responsible for the management of the partnership: "No Limited Partner (in his capacity as a limited partner) shall have or exercise any rights in connection with the management of the Partnership business. Management of the Partnership business shall in every respect be the full and complete responsibility of the General Partner...." Applying the principles set forth in *Rice* and above, we conclude that because the management responsibilities of the partnership were given to Clark as the general partner, Clark was the "'duly authorized constituent[ ]' for purposes of Prof. Con.R. 1.13(a) ... [and] an attorney-client relationship [exists] only between the attorney[ ] and the partnership and not between the attorney[ ] and any individual partner." *Rice*, 670 N.E.2d at 1287.[2] As such, Bell did not have a fiduciary duty arising from any attorney-client relationship with the limited partners to inform the limited partners of his opinion that Clark engaged in unacceptable practices.[3]

## II

Bell also argues on transfer that the Court of Appeals erred in affirming the trial court's conclusion that Clark adequately rebutted Bell's qualified privilege defense claim. Bell contends that his statements about Clark were qualifiedly privileged, insulating him from liability, because they were intracompany communications about the fitness of an employee. *See Bals v. Verduzco*, 600 N.E.2d 1353, 1356 (Ind.1992), citing *Lawson v. Howmet Aluminum Corp.*, 449 N.E.2d 1172, 1175 (Ind.Ct.App.1983). Bell cites *Bals* for the proposition that to overcome the qualified privilege defense, Clark must show that Bell was primarily motivated by ill will in making

---

**1.** Ind.Code § 23-4-1-1 *et. seq. See also* Unif. Partnership Act, 6 U.L.A. 598 (1995).

**2.** In the context of a limited partnership, we adopt the reasoning of Formal Opinion 361 (1991) of the American Bar Association Committee on Ethics and Professional Responsibility dealing with the duty of a lawyer for a partnership to its partners. In *Rice v. Strunk*, we declined to adopt Formal Opinion 361 in the context of general partnerships. *Rice*, 670 N.E.2d at 1287 n. 8.

**3.** We reach this conclusion only with respect to the existence of any fiduciary duty arising from Bell's position as attorney for the partnership. We do not have before us, and do not comment on, whether Bell may have had any disclosure obligations as a matter of partnership law, *cf. Rice*, 670 N.E.2d at 1285, or securities law, *id.* at n. 5. Nor do we comment upon whether the existence of any such duty—fiduciary, partnership law, or securities law—shields a person from liability for libel or defamation.

his statements. Bell claims that the trial court never specifically found that his statements were primarily motivated by ill will.

■ We will not disturb a trial court's conclusions of law unless they are clearly erroneous. *In re Wardship of B.C.*, 441 N.E.2d 208 (Ind.1982). Here, we cannot say that the trial court's conclusion that Clark sufficiently rebutted the qualified privilege defense was clearly erroneous. Although the trial court did not expressly state that Bell's comments were primarily motivated by ill will, the trial court did find: "The evidence supports the conclusion that Richard Bell acted without regard for the truth, acted with malice, acted for a dishonest purpose ... Clark has met his burden of proof in rebutting such a qualified privilege." As such, we conclude that the trial court was not clearly erroneous in its conclusion that Clark rebutted Bell's defense of qualified privilege.

### Conclusion

■ Having found that Bell did not have a duty to inform the limited partners and that Bell's qualified privilege defense was properly rejected by the trial court, we expressly adopt and incorporate by reference the judgment and opinion of the Court of Appeals pursuant to Ind.App.R. 11(B)(3), and affirm the trial court.

SHEPARD, C.J., and DICKSON and SELBY, JJ., concur.

DeBRULER, J., is not participating.